FRANK P. CUMMINGS, and another, *vs.* JUSTIN W. EVERETT, and GERTIE M. EVERETT, his wife.

Oxford.    Opinion January 20, 1890.

*Married Woman.  Infancy.  Promissory note.  Contracts.  R. S., c. 61, § 4.*
    *Act of* 1845, *c.* 116.   *R. S. of* 1857, *c.* 49, § 1.   *Act of* 1866, *c.* 52.

A married woman, under the age of twenty-one years, is not liable on her executory contracts, under R. S., c. 61, § 4.

Usually a revision of the statutes simply iterates the former declaration of legislative will.

ON EXCEPTIONS.

This was an action upon a joint note of the defendants, the only defense being interposed was that the female defendant at the time of signing the note was an infant, the wife of the other defendant, and at the time of the trial was still under the age of twenty-one years.

The presiding justice ruled that the action could be maintained against both defendants, who excepted to the ruling.

*A. F. Moulton, C. E. Holt,* with him, for plaintiffs.

First section of c. 61, R. S., begins, "A married woman of any age," etc.  The following sections, referring back and making the chapter continuous, say, "she may receive," "she is liable," and "she may prosecute."  The natural sequence of the section indicates that it is a "married woman of any age" of whom the

chapter treats. No contract should be held to be made in violation of the law, when by any reasonable construction, it can be made consistent with law. *Bell* v. *Packard*, 69 Maine, 105, 111.

"A married woman of any age" may own property, contract and convey, and having those rights given her by statute, the corresponding liability must go with it. The fact of her marriage should not protect her property from her creditors. Formerly she was hedged in by both minority and marriage. Now the legislature has given her more freedom than her unmarried sister, and the corresponding liability goes with the privilege, hand in hand.

The point could be made with somewhat more force if the present phraseology was the same as in c. 52 of the laws of 1866. Sec. 4, of c. 61 has, however, been almost completely remodeled since then, and has been made a constituent part of the chapter. In its present form the clause referred to has twice been re-enacted.

It would hardly be contended that the limitation of age would prevent a minor married woman from making a contract for any lawful purpose in her own name, or that she must defend it by *prochein ami.* On the contrary she may convey real or personal estate alone; and she may prosecute and defend suits at law in her own name without husband or guardian. The authority of a guardian ceases at her marriage. R. S., c. 67, § 21.

She is under no restraint in business from her husband. She acts in her own right. The court has uniformly held that having been authorized to contract she must not excuse herself from the performance. *Mayo* v. *Hutchinson*, 57 Maine, 546; *Yates* v. *Lurvey*, 65 Maine, 221.

The words "as if sole," found in R. S. of 1857, c. 61, § 1, were struck out by Act of 1861, c. 46, evidently as mere surplusage. *Savage* v. *Savage*, 80 Maine, 472, 479.

*H. M. Bearce and S. S. Stearns*, for defendants.

EMERY, J. This was an action upon a joint note signed by the two defendants, who were husband and wife. The wife was a minor, under the age of twenty-one years, at the time of signing

the note and at the time of the trial. She pleaded that fact in bar, which plea was overruled by the presiding justice, and she excepted.

At common law she would have been under two disabilities as to promissory notes, that of infancy and that of coverture. Both of.these disabilities were in the very web and woof of the common law, but for very different reasons and purposes. The disabilities of infancy were imposed for the protection of the infant. The law wholly regarded his interests, and sought to protect him from any imprudence of his own, even at the expense of adults. An adult dealing with an infant would often be held to the contract which the infant could avoid. The disabilities of the infant were in the nature of privileges and were often so called. 1 Bl. Com. 464. The disabilities of coverture, however, were not so much imposed for the protection of the wife, as for the advantage of husband. In the feudal theory of the common law, the wife was subject to the husband. They were styled in the earlier law books, *baron* and *feme*, or lord and woman. It was accordingly held, in the old cases, that every agreement of every nature entered into by a married woman, without the express or implied consent of her husband, was absolutely void. We do not forget that Blackstone in his optimism, says that the disabilities of the wife are intended for the most part for her protection and benefit, "so great a favorite is the female sex of the law of England," but one need not read very far in the books of the common law to learn that the power and authority of the husband were of far more concern to the law, than the protection and benefit of the wife.

Modern legislation has removed many of the common law disabilities of a married woman, and made her the partner rather than the subject of her husband. In Maine, nearly the last vestige of the husband's control over his wife's business matters has been removed. The emancipation of the wife from such control has clearly been the main if not the only object of such legislation. The plaintiff, however, contends, that the statute, enlarging the powers and obligations of a married woman, have also removed the protection of her infancy against her juvenile improvidence.

We think the words of the statute should be very clear and direct, to work such a radical change in the law, and sweep away so far as married women are concerned, a common law principle, so old, so reasonable, and so universal. We think upon examination they will be found not to have that effect. In such examination we can confine our inquiry strictly to those statutes purporting to make a married woman liable on her promissory notes, as her rights or obligations in other respects are not now in question.

Although several statutes were enacted much earlier as to other powers and liabilities of a married woman, the first statute that professed or had the effect to make her liable on her promissory note, was not passed till Laws of 1866, c. 52. Before that, she was not holden on her promissory note. *Bryant* v. *Merrill*, 55 Maine, 515. The words of that statute are as follows: "The contracts of any married woman made for any lawful purpose, shall be valid and binding, and may be enforced in the same manner as if she were sole." While the words "any married woman" may literally include married female minors it does not follow that they should be so construed in a statute. Statutes are enacted to amend and improve the law of the land, and should be construed with reference to the general body of the law. Comparing this statute with the law at the time of its passage, it is evident the legislature meant only to make her like an unmarried woman in respect to contracts. There is no suggestion of anything more, certainly no suggestion of removing from a female minor who should be married, the shield which had so long guarded all minors male and female, married and unmarried. If the words "any married woman" as used in this statute properly include infants, they also include lunatics and persons *non compos mentis*. It will not be contended that these latter, if married, are liable on notes signed by them in that state. Suppose a statute to be enacted, declaring that "the verbal contract of any person for the sale of land shall be valid and binding," would it not be clear that the only purpose of the statute was to repeal a clause in the Statute of Frauds? Would it be claimed that such a statute operated to make an infant liable on his

promises to convey land, while leaving him free to avoid his other promises?

The plaintiff, however, urges that the statute of 1866, was afterward incorporated into the R. S. of 1871, and again of 1883, in the chapter entitled "Rights of Married Women" in § 4, and there re-enacted in common with § 1, which contains the words, "a married woman of any age." His argument is that the whole chapter, as now revised, is to be construed as a whole; each section modifying and influencing the meaning of all the other sections; and that the words, "a married woman of any age," expressed in the first section, are to be understood in the following sections unless otherwise stated. Of course, the whole chapter should be studied; but it should be borne in mind that though technically enacted together, the different sections and clauses were first enacted independently, at different times, under different circumstances and for different purposes. In our efforts to ascertain the meaning of any section or clause, we should resort to the original statute from which it was condensed and search for the legislative intent in the words of the statute, and also in its occasion and purpose, and in the jurisprudence of the time. When a statute is incorporated in a general revision of all the statutes, and re-enacted along with the re-enactment of other statutes, its purpose and effect are not changed unless there be some compelling change in the language. Usually a revision of the statutes simply iterates the former declaration of legislative will. *Hughes* v. *Farrar*, 45 Maine, 72; *French* v. *Co. Com.*, 64 Maine, 583, 585.

Although the phraseology of the statute of 1866 has been much condensed in the revision, there has not been so much change of phraseology, as to change or extend the meaning or effect. Statutes had been passed at various times relative to a married woman's right to acquire, hold and convey property. None of them made any allusion to the minority of a married woman. Upon the consolidation of these successive statutes into § 1, of c. 49 of the R. S. of 1857, the words "any married woman" which had been the phrase in all of them, were changed for the words "a married woman of any age." We have

no occasion to imagine how the change came about. It was made only in condensing the statutes relative to the acquiring, holding, and disposing of property. There may have been an occasion and an intent to make such change of words and of legislative will. The change of will, however, should not be construed as extending further than the change in words. In construction it should be confined to the subject matter of the statute in which the change is made. In condensing the statutes relative to the executory contracts of married women, a different subject matter, no such change was made.

Moreover the whole body of previous and cotemporaneous legislation should be considered in interpreting any statute. The legislative department is supposed to have a consistent design and policy, and to intend nothing inconsistent or incongruous. After the legislature had in 1844, entered upon the work of emancipating married women from the disabilities of coverture, it in 1845, c. 116, recognized the necessity of protecting infants from improvident contracts, and affirmed and strengthened the common law rule by enacting that infants should not be bound by an affirmance of their contracts, after they became of age, unless the affirmance should be in writing. This statute has been continued through three revisions to this day side by side with the statutes relative to married women, and indicating a continued purpose to preserve the privileges of a minor.

Our conclusion is, that the legislature has not yet expressed or implied an intention that a married woman, under the age of twenty-one years, shall be held liable on her executory contracts.

*Exceptions sustained.*

PETERS, C. J., WALTON, VIRGIN, FOSTER and HASKELL, JJ., concurred.