EMMA J. CHENEY, Petitioner for Partition,

*vs.*

GEORGE F. CHENEY et als.

Oxford.　Opinion December 20, 1912.

*Descent. Dower. Inheritance. Personal Property. Partition. Real Estate.*
*Release. Tenants in common. Waiver. Will.*

1. The question presented by the petition is solely that of the rights of Emma J. Cheney in the real estate of her deceased husband, Charles J. Cheney, who died testate and in whose will no provision was made for his widow.

2. Public Laws of 1895, Chapter 157, amending Section 1, Chapter 75, Revised Statutes of 1883, which is found in Section 13, Chapter 77 of

Revised Statutes of 1903, abrogated the old rule of dower regarding the interest of a widow in the deceased husband's lands and conferred upon her an estate of inheritance instead of an interest for life.

3.  The Legislature, by the act of 1907, did not intend to repeal or modify the widow's right by descent in the contingencies named nor by the use of the language employed did it do so.

4.  This provision of the act of 1907, although incorporated into Section 13 of Chapter 77, Revised Statutes of 1903, relating to title by descent must be construed to mean just what the language conveys and be confined to personal estate only.

Petition for partition.  Judgment for partition.

This is a petition for partition of certain real estate situated in Rumford, in the County of Oxford, by the widow of Charles J. Cheney, late of Rumford aforesaid, deceased.  The real estate in question belonged to her husband, Charles J. Cheney, at the time of his death, and Emma J. Cheney claims, as the widow, to be entitled under Revised Statutes of 1903, Chapter 77, Section 13, to one undivided half part of said real estate in fee instead of for life. The respondents filed the following answer to said petition:

"And now, on this first day of said term, the said respondents, George F. Cheney, Levi M. Powers, Cora C. Adams and Etta Pierce, and by way of brief statement say; that the partition of the real estate described in said petition as prayed for ought not to be made, because they say that the said Emma J. Cheney was not, at the date of her said petition, and is not now, the owner of one undivided half part, or any other part, of the real estate described in her petition, and was not, at the date of her said petition, and is not now, a tenant in common, or joint tenant, in said real estate with the respondents.  And that respondents further say that they were, at the date of said petition, and now are, the owners in fee simple of the whole of said real estate.  At the conclusion of the evidence, the case was reported to the Law Court, which is to render such judgment upon so much of the foregoing evidence as is legally admissible and material as the law, the facts and the proper inferences from the facts may require.

The case is stated in the opinion.

*Newell & Skelton,* for the petitioner.

*John P. Swasey, Aretas E. Stearns, and H. H. Hastings,* for respondents.

SITTING: WHITEHOUSE, C. J., SAVAGE, SPEAR, CORNISH, KING, HALEY, JJ.

SPEAR, J.　This is a petition for partition brought by Emma J. Cheney of Rumford, in Oxford County, under the provisions of Chapter 90 of the Revised Statutes of Maine, to have set off to her in severalty, her alleged share of certain real estate, situated in said Rumford, and in which the said petitioner claims that she is the owner in fee, of one-half interest, held in common, undivided, and in tenancy in common with the respondents named in said petition. The basis of the petitioner's claim is that she is the widow of Charles J. Cheney, late of said Rumford.

The question presented by this petition is solely that of the rights of Emma J. Cheney in the real estate of her deceased husband, Charles J. Cheney, who died testate and in whose will no provision was made for his widow.

The matter under consideration is an enactment of the Legislature obviously intended to abrogate the old rule of dower regarding the interest of the widow in her late husband's lands, and to confer upon her an estate of inheritance instead of an estate for life.

The solution of this problem involves a construction of R. S., Chap. 77, Sec. 13, in which is found a consolidation of the previous statutes relating to this subject. It is now an established rule of construction that the intent of the Legislature is the law when such intent can be declared without doing violence to the clear and unambiguous language of the statute. With this end in view, it becomes necessary to interpret Section 13 with an effort to discover, (1) the intent of the Legislature in changing the law, and (2) if that intent is consistent with the language of the enactments calcu-'ated to accomplish the desired result.

The title of the act which initiated this legislation is found in the Public Laws of 1895, Chapter 157, and reads as follows: "An act to amend Section 1 of Chapter 75 of the Revised Statutes, (1883) relating to title by descent, and to establish the rights of widows and widowers in the real estate of deceased husbands and wives." It may here be said that only those sections of the chapter which relate to the right of widows and widowers are involved in this

case, and consequently relate solely to lands or real estate. It was, then, evidently the primary intention of the Legislature, in enacting this chapter, to change the quality of the estate to which a widow was entitled under the law of dower, from a life estate to an estate in fee, and in other respects neither to increase nor diminish the attributes of the estate. Whether the phraseology of the statute does more than this is the question.

R. S., 1883, Chapter 103, provided for dower at common law. This was a right of which the widow could not be deprived by the husband by will or otherwise, except as hereinafter noted. If he made no will, she received her interest as a matter of course, upon petition. If he made a will and devised to her less than her dower interest, she could waive the devise and obtain her dower. R. S., 1883, Chapter 65, Section 5; Chapter 103, Section 10. If he made a will without provision, her right was preserved. Chap. 103, Sec. 1. Dower, then, was an absolute right unless barred or released. It was, however, but a life interest.

In 1895 the Legislature proceeded to the enactment of a statute, the sole purpose of which seems to have been to change dower from a life interest to an estate in fee. It did not pretend to affect the quantity of the estate, nor the nature of the right. Its absolute character for the protection of the widow was not intended to be disturbed, as will appear from the following analysis. Section 1, Paragraph 1, Public Laws of 1895, reads as follows: "If he leaves a widow and issue, one-third to the widow. If no issue, one-half to the widow. And if no kindred, the whole to the widow. And to the widower shall descend the same share in his wife's real estate. There shall likewise descend to the widow or widower the same share in all such real estate of which the deceased was seized during coverture, and which has not been barred or released as herein provided." The latter part of this paragraph is a substitute for the old provision for dower. It vests in the widow an absolute estate, if not barred or released, as hereinafter provided. In other words, the substitute clothes the new estate with all the attributes of dower, except the quality of the estate.

It will now be noted that the provisions for bar or release, Sections 3, 4 and 5, have adopted, in a little different phraseology, the rules of defeasance that are found in the Revised Statutes relating

to dower. Section 3 provides precisely as in case of dower: "But shall not be deprived of such right and interest by levy or sale of the real estate on execution." This would seem to prove that this new estate was to vest in the widow, precisely as dower did, as a right of which she could not be deprived, except in one of the ways mentioned as a bar or release. Section 4 provides for the waiver of a specific provision of a will, which is also identical with the right under the rule of dower. The other provisions for bar and release are immaterial to the issue here. It, therefore, appears from an analysis of the statutes of descent touching a widows' rights, that the properties and characteristics of the new estate are practically the same as those of the dower estate. All the bars and releases are identical in meaning, although changed in phraseology in condensing. This leaves the positive rights in the new estate equivalent to the positive rights in the old. Our court in *Pooler* v. *Pooler*, 95 Maine, 259, has so construed the statute, in which it is *held:* "The statute does not change the status of the widow with reference to her deceased husband's estate. It enlarges her interest by giving her an estate in fee instead of an estate for life. She still takes not as heir, but as widow." At this juncture, the status of the widow in relation to her inheritance in her husband's estate is precisely as it was with reference to dower. Up to this point her rights in the personal estate of her husband are not affected or even referred to.

It would appear, then, that when the statute of 1895 became a law, the only change the Legislature intended to make, or in the use of the language employed, did make, was to enlarge the interest of the widow by giving her an estate in fee instead of an estate for life. In all other respects, whether there was a will or no will, or a will with no provision for her, her interest in the lands of her husband was not affected, nor were her rights in the personal estate of her husband altered in the least, or even referred to in this act. If, therefore, this case was to be decided upon the act of 1895, no controversy could arise respecting the right of the widow to share one-half the real estate of her late husband.

But the defendants claim that the phraseology of Section 13, as consolidated in the revision of 1903, if considered, in clear and unequivocal terms confines the right of the widow, when no provision is made for her in the will, to personal estate only. But the provision which confines the right of the widow to personal estate, when no provision is made in the will, is incorporated from Chapter 221 of the Public Laws of 1897 and Chapter 160 of the Public Laws of 1903. Now in order to arrive at a proper interpretation of section 13, it becomes necessary to refer to these statutes and discover, if possible, their bearing upon the construction already given to the statute of 1895. It has been noted that the act of 1895 in no way related to the rights of the widow in the personal property of her husband's estate. The act of 1897, therefore, is not in any way an amendment of Chapter 157 of the laws of 1895, but an entirely new section having no relation to that chapter or to the subject matter of it. It pertains wholly to personal estate. The first paragraph of Section 221 is a provision that the widow may waive a bequest under the will of her husband, and upon such waiver, be entitled to the same distributive share of his personal estate, as is provided by law in intestate estates. By the second paragraph, if no provision is made in the will of the testator for his widow, she may receive the same distributive share of the personal estate of such testator as is provided by law in intestate estates, upon filing a written notice that she claims such share. Even from a casual observation, it is apparent that this section in no way did, or was intended to, effect the right of descent provided for in the act of 1895. But it is the last paragraph of this section as found in the consolidation of Section 13, Chapter 77, R. S., 1903, which the respondents invoke as limiting the right of descent, when no provision is made in the will of the husband, to personal estate only. It was undoubtedly the purpose of the Legislature in enacting this independent statute, to bring the provision for the distribution of personal property, in the two instances named, in harmony with the law governing the descent of real estate. For an examination of our statutes will show that, previous to the enactment of Chapter 221, there was no law providing that the widow, in either of these contingencies, should receive one-third or one-

half the personal property, as the case might be. Under the old statute, if there was no will, the widow received one-third or one-half, as the case might be, of the personal estate. R. S. Chapter 75, Section 9. If a will, without provision for her, she could petition for an allowance. Chapter 65, Section 21. If a will with provision for her, she could waive the provision and petition for an allowance. Chapter 65, Section 21. By Section 2 of Chapter 221 the rights above enumerated are not molested. It therefore appears that the two contingencies provided for in Section 21 of Chapter 65, R. S. are identical with the contingencies provided for in Chapter 221, laws of 1897, and that by the latter chapter, in addition to the right of an allowance, is given to the widow the absolute right to one-third or one-half of the personal property of her late husband, precisely the interest she had been allowed in his real estate. It therefore seems to be established beyond cavil that the sole intention of the Legislature in the enactment of Chapter 221 was to confer upon the widow the additional rights, in the personal estate, prescribed, and to do nothing more. At this point we think it may be said that Chapter 221, when it became a law, in no way amended or modified the provisions of the act of 1895.

The only other statute relating to this matter is Chapter 160 of the Public Laws of 1903, which is an amendment of Chapter 221, supra, that places the widower, with reference to his personal estate, in the same category with the widow, and need not be further noticed.

Our conclusion, therefore, is that upon an analysis and comparison of these various statutes the Legislature by the act of 1907 did neither intend to enact a statute repealing or modifying the widow's right by descent in the contingencies named, nor by the use of the language employed, did it do so; and that the provisions of 1897, although incorporated into a section of the statute relating to title by descent, must be construed to mean just what their language conveys and be confined to personal estate only. It will be observed also that there is nothing in the phraseology of these two provisions, as they are read in Section 13, R. S., Chapter 77, that connects them with the widow's right of inheritance.

An examination of the composition of this section confirms this view. The first part of Section 13, to the point where Section 221 is inserted, is a consolidation of Section 5 of Chapter 157 of the laws of 1895, which is but a restatement of R. S., Chapter 103, Section 10, and of Chapter 88, Public Laws of 1887 relating solely to widows' dower, and so much of Chapter 75, Public Laws of 1903, as related to the time when the election must be made; all pertaining to the rights of the widow in the real estate of her husband.

If Section 13 comprising a consolidation of these acts relating solely to the widow's right of inheritance in the real estate of her husband had been permitted to complete the section, it would have accomplished precisely what the Legislature intended to have enacted. But instead of stopping here, it adds to the end of the consolidation of these acts, verbatim, Chapter 221, relating to the widow's additional rights in the personal estate of her husband, created by this act, with so much of the act of 1903 as relates to the time when waiver of petition must be filed. This, we think, should have been a section by itself among those provisions of the statute relating to the rights of a widow in personal estate. However that may be, the mere fact that this act was added to a consolidation of the acts relating to descent, cannot be accorded the effect of defeating the plain intent of the Legislature with regard to the former enactments.

In 1909, Public Laws, Chapter 260 the Legislature amended Section 13 by inserting the proper words and phrases to make the last paragraphs include real as well as personal estate, but by so doing simply made clear, what was left obscure in the act of combining the different statutes in one section. The amendment did not affect the interpretation of the section as it stood. It did, however, in harmony with one of the objects of Legislation, remove ambiguity and doubt.

In accordance with the stipulation in the report, the entry must be,

*Judgment for partition.*