IN RE: ESTATE OF CHARLES OTIS FOSS

Cumberland.   Opinion, July 16, 1964.

*Mark L. Barrett,* for Helen C. Kelley.

*Edward F. Dana,* for Canal National Bank.

*Bernstein, Shur, Sawyer and Nelson,*
  by *C. Daniel Ward,* for Children's Hospital.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, SIDDALL, MARDEN, JJ.

WEBBER, J.   This was an appeal from the Probate Court by agreement of the parties on an agreed statement of facts under the provisions of R. S., Chapter 153, Section 32, as amended.

Charles Otis Foss died testate on March 3, 1963 survived by his widow but leaving neither issue nor kindred.   The widow and testator were living together at his decease.   His

entire estate consists of personal property. His will made certain specific bequests including some provision for his widow with an ultimate remainder over to charitable beneficiaries, one of which is appellant here. The widow seasonably waived the will and the corporate executor petitioned for determination of the extent of her interest after waiver. The Probate Court determined that she was entitled to the entire net estate to the exclusion of all other takers named in the will. The court on appeal is required to interpret the provisions of R. S., Chap. 170, Secs. 14 and 20.

R. S., 1944, Ch. 156, Sec. 1, Subsec. I provided (as to descent of real estate) in part: "If no kindred, the whole to the widow." Sec. 20 (as to descent of personal property) provided that "the residue shall be distributed * * * by the rules provided for the distribution of real estate." Sec. 14 provided (as to the share of a widow who waived the provisions of a will) that she would take "the same distributive share * * * as is provided by law in intestate estates." By reference to Secs. 1 and 20 therefore the widow waiving the will, there being no kindred, took all.

P. L., 1945, Chap. 76 added an exception to R. S., 1944, Chap. 156, Sec. 14 in these terms: "Except that if such testator, or testatrix, died *leaving no kindred,* such widow or widower shall have and receive the same * * * distributive share of the real and personal estate of such testator or testatrix as is provided by law in intestate estates of persons deceased *who die leaving kindred.*" (Emphasis ours.) After this amendment the widow's waiver produced the same share for her that she would have received by intestacy if the decedent left kindred but less than she would have received by intestacy if the decedent left no kindred. Stated otherwise, a widow could thereafter under no circumstances receive by mere waiver a distributive share of the net personal estate in excess of one-half thereof. This

provision was designed to protect the right of a testator to dispose effectively of at least one-half of his net personal estate without risk that his dispositive actions could be negated by action of his surviving spouse.

R. S., 1944, Chap. 156, Sec. 1, Subsec. I was amended by P. L., 1949, Chap. 439 to provide in part that in the case of intestacy where the decedent left no issue, his widow who lived with decedent at the time of his death would take up to $5,000 plus one-half of the remaining net estate in competition with his kindred. Subsequent references in this opinion to the "widow" will pertain only to widows who otherwise qualify as having lived with the decedent at the time of his death, such decedent having left no issue.

The revision of 1954 incorporated the provisions above described into Chap. 170, Secs. 1, 14 and 20. The $5,000 preferential share of the widow was increased to $10,000 by P. L., 1957, Chap. 290. The 1957 amendment, however, went further and provided in part with respect to the rules of descent of personal property, no issue surviving (amending R. S., Chap. 170, Sec. 20) as follows:

"B. If the residue found by the probate court was more than $10,000, the sum of $10,000, and of the remaining personal property, $\frac{1}{2}$ to the widow and $\frac{1}{2}$ to the next of kin of equal degree, not beyond kin in the 2nd degree. If no such kindred, the whole of the remaining personal property to the widow."

No effort was made by the legislature to change the waiver section by direct amendment and it must now be determined what effect the above quoted change in the rules of descent had upon the waiver section and particularly upon the exception inserted into that section in 1945. All agree that since the determination of the shares to be distributed under the waiver section are by its terms dependent upon the provisions of the sections dealing with the distribution of shares in intestate estates, changes in the latter necessarily

affect the former and they cannot be considered or construed independently.

The view taken by the court below and asserted by the appellee here is that the exception adopted in P. L., 1945, Chap. 76 and now appearing as part of R. S., Chap. 170, Sec. 14 was repealed by implication arising from its inconsistency with the provisions of P. L., 1957, Chap. 290. The appellant urges that the manifest intention of the legislature was to amend R. S., Chap. 170, Sec. 14 by implication so that "leaving kindred" as used in the exception would now read "leaving kindred within the 2nd degree." Both parties recognize that since 1957 the exception can no longer be literally applied in the situation in which the testator leaves no kindred whatever. The word "kindred" therein becomes meaningless when resort is had as it must be to Sec. 20. There remains unanswered the question "what kindred" or "what degree of kindred" since Sec. 20 now recognizes two classes and deals with them differently. We have no alternative therefore to seeking the general legislative intent and purpose with respect to Secs. 1, 14 and 20 read and construed together.

We may not overlook the fact that while in its several amendments of the intestacy sections the legislature clearly evidenced a policy of liberalizing benefits to the surviving spouse, its retention of the 1945 exception in the waiver section evidenced just as clearly a policy of imposing certain restrictions on such benefits except in estates of modest size. In short, the spouse competing with the decedent's more remote kindred in an intestacy situation was favored to a greater extent than was a spouse competing with the named objects of a testator's bounty for shares in substantial estates.

The obvious policy and purpose underlying the 1945 exception was, as already noted, to assure that a testator could dispose of a portion of his estate with some certainty that

his wishes would be carried out, and that it would not lie within the power of his widow to destroy utterly his testamentary plan. If the 1957 amendment has repealed the exception by implication, no testator would have such assurance in the future. This would be a drastic and far reaching change in legislative policy which we would expect to find accomplished by direct amendment of the waiver statute (Sec. 14) itself rather than by such an oblique approach as the mere amendment of the descent statutes (Secs. 1 and 20). It seems to us more probable that the legislature inadvertently omitted the amending of Sec. 14 in such a way as to conform it to the changes made in Secs. 1 and 20 and preserve the policy of limiting to some degree the power of a surviving spouse to defeat the wishes of a testator. Such a result is accomplished if we treat the direct amendment of Secs. 1 and 20 as an amendment by implication of Sec. 14 to which it is so closely related by reference. Thus amended, the applicable portion of Sec. 14 would be construed as though it read:

> "When a provision is made in a will for the widow of a testator * * * and such provision is waived as aforesaid, such widow * * * shall have and receive * * * the same distributive share of the * * * personal estate of such testator * * * as is provided by law in intestate estates, except that if such testator * * * died leaving no kindred within the 2nd degree, such widow * * * shall have and receive the same * * * distributive share of the * * * personal estate of such testator * * * as is provided by law in intestate estates of persons deceased who die leaving kindred within the 2nd degree. * * * ."

The construction which we have above set forth as to Sec. 14 preserves and harmonizes both legislative policies, whereas any other construction is completely destructive of at least one of them. The legislative policy which appears to attach more importance to testamentary disposition than to the remote ties of blood relationship is not unlike that

which enables a testator to deprive his children of his bounty by appropriate expression in his will. This right of a testator to eliminate issue as takers obtains even though the beneficiaries substituted and preferred by him are strangers to the blood. Although the legislature has created protective bounds beyond which a testator may not go in reduction of the share of the surviving spouse, it has never departed from the principle that the right of testamentary disposition is considered to be of great importance. Just as the widow in an intestacy situation must yield a share of the estate to the kindred within the 2nd degree, so also must she yield a portion to the takers named in her husband's will.

In the case of intestacy there is no formulation of any plan of distribution by the decedent. The intestacy statutes are provided to fill the vacuum thus created and provide an orderly pattern based upon the presumption that the surviving spouse and those who stand in closest relationship within the blood line are the natural objects of the decedent's bounty. The statutory plan is at best designed only to serve as a substitute for a testamentary plan and to carry out what would normally be assumed to be the wishes of the decedent. When a testator presents a plan by will which meets certain minimum requirements for the protection of surviving spouse and children, it is controlling and there is no need for a statutory device. The power of devising by will has been termed a legal incident to ownership and one of the most sacred rights attached to property. *Deering* v. *Adams* (1853), 37 Me. 264, 269.

We think the language employed by the court in *Farris, Atty. Gen.* v. *Libby*, 141 Me. 362, 365, 44 A. (2nd) 216, 218 has application here. The court said:

> "And it is the intent of the legislature which controls, not the particular language which has been used to express that intent. It is the obligation of all concerned, and the particular duty of this court,

to approach the solution of a problem such as this, not in a spirit of captious insistence on the letter of the law, but with tolerance and understanding to carry out its spirit. To that end, all parts of the statute should be read as a whole; ambiguities should be resolved; we should seek to neutralize the effects of obvious omissions; and we must assume that the legislature did not intend an absurd result or one which is clearly harmful."

We are confident that if and when the legislature concludes that it should abandon its policy of providing some protection of the right of testamentary disposition in such cases as this it will do so by clear and unequivocal amendment of Sec. 14 either by outright repeal of the exception or appropriate modification thereof. Until such legislative change of policy is clearly evidenced, the amendments must be deemed to disclose nothing more than an inadvertent omission and an unintended failure to modify the word "kindred" in Sec. 14 in the same manner as it was modified in the intestacy sections.

Thus in the instant case, treating the exception in Sec. 14 as amended to conform to the present language of Sec. 20, there being no kindred within or without the 2nd degree, the widow will take that share which she would have taken had there been kindred within the 2nd degree. This share will comprise $10,000 plus one-half of the remaining net personal estate.

*Appeal sustained.*

*Case remanded to the Probate Court for further proceedings in accordance with this opinion.*