Patricia MUNDY, as next friend of her minor children: Alison L., Pamela J., Beth, William T. and Tricia A. Mundy

v.

Shirley Mundy SIMMONS, individually and as next friend of her minor child, Benjamin Mundy.

Supreme Judicial Court of Maine.

Argued Sept. 17, 1980.

Decided Dec. 30, 1980.

Sunenblick, Fontaine & Reben, Howard T. Reben (orally), M. Elaine Patrick, Portland, for plaintiff.

Monaghan & Leahy, Joan M. Kidman (orally), Thomas F. Monaghan, Kevin G. Libby, Portland, for defendant.

Before WERNICK, GODFREY, NICHOLS, GLASSMAN, ROBERTS and CARTER, JJ., and DUFRESNE, A.R.J.

DUFRESNE, Active Retired Justice.

The plaintiff, Patricia Mundy, instituted the instant action for declaratory judgment in the Superior Court, Cumberland County, as next friend of her five minor children by her deceased former husband, William Mundy, pursuant to 14 M.R.S.A. § 5954.[1] She brought in as party defendant the decedent's widow, Shirley Mundy, since remarried to one Simmons, in her individual capacity as widow of William Mundy and in her capacity as next friend of Benjamin Mundy, the minor child of the decedent William Mundy and the defendant Shirley Mundy, now Simmons.

William Mundy died as a result of an industrial accident on October 7, 1976. The administrator of his estate sued for damages for the wrongful death of his intestate, and on February 16, 1979 a settlement of the suit was approved by the Court pursuant to the provisions of 18 M.R.S.A. § 2552.[2]

The present action for declaratory judgment is an appropriate vehicle for establishing rights in property, personal or real, as well as it is to determine basic status or legal relationships upon which such rights may depend. 14 M.R.S.A. § 5954. See

*Hodgdon v. Campbell*, Me., 411 A.2d 667 (1980).

The defendant-appellant contends before us that the Superior Court Justice committed reversible error when he construed section 2552 of title 18, M.R.S.A., as requiring distribution of the settlement fund per capita, *i. e.* in one seventh parts to each of William Mundy's surviving widow and his six minor children. The Superior Court judgment ordering the stated per capita distribution is indeed legal error and we now vacate it in this appeal.

The reference statute, at the time of the accidental death of William Mundy on October 7, 1976, read in pertinent part as follows:

> Every such action shall be brought by and in the names of the personal representatives of such deceased person, and the amount recovered in every such action, except as otherwise provided, shall be for the exclusive benefit of the widow or widower, if no children, and of the children, if no widow or widower, and if both, then for the exclusive benefit of the widow or widower and the children equally, and, if neither, of his or her heirs.
>
> \*      \*      \*      \*      \*      \*
>
> ... M.R.S.A. § 2552.[3]

It readily appears from the face of the statute that our problem lies in determining whether the legislative terminology

> —and if both, then for the exclusive benefit of the widow or widower and the children equally—

---

**1.** 14 M.R.S.A. § 5954 provides in pertinent part as follows:

> Any person ... whose rights, status or other legal relations are affected by a statute, ... may have determined any question of construction ... arising under the ... statute, ... and obtain a declaration of rights, status or other legal relations thereunder.

**2.** 18 M.R.S.A. § 2552, in effect at the time of settlement, provides in part:

> No settlement on behalf of minor children shall be valid unless approved by the court, as provided in section 3652. (P.L.1977, chap. 564, sec. 85).

> In the Probate Code, effective January 1, 1981, the same provisions appear in 18–A M.R.S.A. § 2–804(b).

**3.** The underlying cause of action referred to in section 2552 is founded upon section 2551 reading as follows:

> Whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the person who or the corporation which would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as shall amount to a felony.

was used to indicate an equal division of the statutory wrongful death benefits between the decedent's widow on the one hand, and the decedent's children on the other, or was the legislative design to mandate the distribution of an equal share to each person of the group identified as the decedent's widow or widower and children.

The textual phraseology of the statute brings out instantly the existence of a real ambiguity, which underlies the judicial power to construe legislation. *Walker v. Walker*, 111 Me. 404, 408, 89 A. 373 (1914); *Coffin v. Rich*, 45 Me. 507, 511 (1858).

■ While, generally speaking, the "plain meaning" of any statute as objectively manifested on its face will control, we do recognize that the fundamental rule of statutory construction is to ascertain the real purpose and intent of the Legislature which, when discovered, must be made to prevail. *New England Tel. & Tel. Co. v. P.U.C.*, Me., 376 A.2d 448, 453 (1977); *King Resources Company v. Environmental Improvement Commission*, Me., 270 A.2d 863, 869 (1970).

■ In construing a legislative enactment, the court will give it such meaning as may best answer the intention which the Legislators had in mind, when they enacted the statute. *Town of Arundel v. Swain*, Me., 374 A.2d 317, 319 (1977); *In re Spring Valley Development*, Me., 300 A.2d 736, 741 (1973).

■ Thus, once ambiguity is found to exist, the court may go beyond the wording of the legislation and look to the history of the statute itself, the policy behind it, including contemporaneous related legislation, in order to reach true legislative intendment. See *Finks v. Maine State Highway Commission*, Me., 328 A.2d 791 (1974); *Cummings v. Everett*, 82 Me. 260, 264–265, 19 A. 456 (1890); *State v. Boyajian*, Me., 344 A.2d 410, 412 (1975).

■ But, at times, when there is ambiguity in prior legislative terminology, enactments by a subsequent legislature may throw light on the legislative intent underlying previously enacted legislation and may be taken into consideration in dissipating the uncertainty of a foundational statute. *Delano v. City of South Portland*, Me., 405 A.2d 222, at 226 (and cases cited) (1979). See also *Washington v. St. Charles Parish School Board,* La., 288 So.2d 321 (1974).

■ This is the case here. In 1977, our Legislature amended the wrongful death statute. Section 2552 of title 18, applicable at the time of death of William Mundy on October 7, 1976, which stated that the amount recovered in such action for wrongful death

—shall be for the exclusive benefit of the widow or widower, if no children, and of the children, if no widow or widower, and if both, then for the exclusive benefit of the widow or widower and the children equally, and, if neither, of his or her heirs—

was amended to read that the amount recovered in such action

—shall be for the exclusive benefit of the widow or widower, if no children, and of the children, if no widow or widower, *and if both, then ½ for the exclusive benefit of the widow or widower and ½ for the exclusive benefit of the children, to be divided among the children in equal shares,* and, if neither, of his heirs. (Emphasis ours)

The legislative history of the amendment indicates that it was not intended as a change in substance, but only as a means to clarify preexisting legislative intent. The statement of purpose attached to the act's legislative documents, mandated by Rule 12–A of the Joint Rules of the two Houses of the Maine Legislature[4] reads as follows:

"The present law is *unclear* as to how damages in wrongful death cases are to be divided in cases when there are a

---

4. Rule 12A, adopted at the special session in 1970 (see Legislative Record, Maine 1969, Vol. 3, pp. 55, 86, 89, 112), renumbered Rule 29 in 1977 and presently Rule 31, reads as follows:

*Statement of Fact.* All bills and resolves shall, upon introduction and later amendment thereof, be accompanied by a written statement of fact indicating intent.

widow or widower and children." (Emphasis added)

Such extrinsic matter may be taken into consideration in interpreting existing ambiguous legislation.[5] See *Equifax Services, Inc. v. Cohen*, Me., 420 A.2d 189, 209–210 (1980).

This clarifying amendment simply made clear what was left obscure at the legislative unveiling in 1891 of the *civil* cause of action in favor of survivors of victims whose death was caused by the wrongful act, neglect or fault of others, an obscurity running through many revisions of the laws until the reference amendment in 1977. We approve the language of this Court in *Cheney v. Cheney*, 110 Me. 61, 85 A. 387 (1912), where in an analogous situation it said:

"The amendment did not affect the interpretation of the section as it stood. It did, however, in harmony with one of the objects of Legislation, remove ambiguity and doubt." Id. at 68, 85 A. 387.

We do not rest our present interpretation, however, solely on the basis of the 1977 amendment. Even without the amendatory clarifying legislation, the history of the wrongful death statute, viewed in itself or in combination with the contemporaneous legislation in related areas, compels the finding that in 1891, when the *civil* cause of action for wrongful death originated, the Legislature intended that the victim's survivors, if consisting of a widow and children, would divide the compensatory pecuniary award equally, meaning one half to the widow and the other half to the children in equal share.

▬ Initially, we recognize that legislative intent must be factually determined as of the time of the enactment of the law under consideration, in this case as of 1891. *State v. Vogl*, 149 Me. 99, 99 A.2d 66 (1953). If any ambiguity exists in a statute, resort

may be had to the original to aid construction. *Jenness v. State of Maine*, 144 Me. 40, 64 A.2d 184 (1949).

When the Legislature in 1891 provided a general civil remedy for loss of life due to wrongful conduct of others, whether individuals or corporations, it did not act in a vacuum. There existed at the time a mode of enabling the widow or children to recover for the loss of a father and husband in limited areas. *State v. Grand Trunk Railway*, 58 Me. 176, 182 (1870). The remedy was by indictment. Although criminal in form and prosecuted at the public expense, the process was essentially a civil suit, prosecuted for the benefit of private parties. The 1891 statute superseded and abrogated this anomalous and incongruous proceeding by providing the general civil cause of action for wrongful death. *State v. Maine Central Railroad Company*, 90 Me. 267, 38 A. 158 (1897).

The new act, however, in defining the rights of the survivors, borrowed the exact language which the old legislation carried at the time. Indeed, the Revised Statutes, 1883, chap. 51, sec. 68 provided as follows:

Sec. 68. Any railroad corporation, by whose negligence or carelessness, or by that of its servants or agents while employed in its business, the life of any person, in the exercise of due care and diligence, is lost, forfeits not less than five hundred, nor more than five thousand dollars, *to be recovered by indictment* found within one year, *wholly to the use of his widow, if no children; and to the children, if no widow; if both, to her and them equally; if neither, to his heirs.* (Emphasis supplied)

The language of the 1883 revision, equally as ambiguous as that of the wrongful death civil action act of 1891, as well as that of the preceding 1871 and 1857 revisions (R.S. 1871, chap. 51, sec. 36; R.S. 1857, chap. 51, sec. 42), becomes crystal clear when the

---

5. Similar extrinsic matter has been considered by the courts to ascertain legislative intent. See *Rumph v. Lester Land Co.*, 205 Ark. 1147, 172 S.W.2d 916 (1943) (Commissioner's prefatory note to Uniform Acknowledgment Act); *Ex parte Collett*, 337 U.S. 55, 69 S.Ct. 944, 93

L.Ed. 1207 (1949) (Reviser's notes in relation to an act of Congress); *State v. Daniels*, 236 La. 998, 109 So.2d 896, at 898, footnote 3 (1959) (Reporter's comments to the Criminal Code); *In re Hickerson*, 235 N.C. 716, 71 S.E.2d 129 (1952) (Stamped and handprinting on bill).

original enactment in favor of the widow and children is taken into consideration. In Public Laws, 1855, chapter 161, sections 1 and 2, the Legislature imposed upon railroad corporations and common carriers, for loss of life by reason of the gross negligence, carelessness or unfitness of their servants or agents, liability

"to a fine, not exceeding five thousand dollars, and not less than five hundred dollars, to be recovered by indictment, to the use of the executors or administrators of the deceased person, *for the benefit of his widow and children, one moiety thereof to belong to his widow, and one moiety to his children; but if there shall be no children, the whole to his widow; and if no widow nor child, the whole to his heirs at law.*"

█ It is a cardinal principle in statutory construction that a mere change in phraseology in the reenactment of a statute in a general revision does not change its effect unless there is evident a legislative intention to do so. *Haskell v. Young*, 134 Me. 221, 223, 184 A. 394 (1936); *Tarbox v. Tarbox*, 120 Me. 407, 409, 115 A. 164 (1921); *Cummings v. Everett*, 82 Me. 260, 264–265, 19 A. 456 (1890). No such legislative intention appears here. Originally, the Legislature apportioned the wrongful death award, one half to the widow and the other half to the children. Such specific design, which appears in the fountainhead of the wrongful death legislation, must stand, notwithstanding the subsequent confusion caused by the change in phraseology in an attempt at condensation of the statutory provisions.

As in the case of our intestacy laws, the statutory plan of distribution of wrongful death awards was designed to favor the surviving spouse and those who stand in closest relationship within the blood line as the natural objects of the decedent's bounty. See *In Re: Estate of Charles Otis Foss*, 160 Me. 214, 219, 202 A.2d 554 (1964). The surviving spouse, in either sphere of the law, was never viewed as a member of a single homogeneous class with the surviving children, but was treated separately and provided with a specific allocation based on her individual status, while the children were provided for as a distinct class on their own.

█ From this overall design of the Legislature respecting the rights of survivors and the specific history of the wrongful death statute, we are convinced that section 2552 of title 18 must be interpreted as requiring distribution of the wrongful death award in the instant case in the proportion of one half thereof to the widow and the other half to be divided equally among the children.

The entry will be:

Judgment below vacated.

Remanded to the Superior Court for that Court to order the return of the moneys held in escrow as the remaining portion of the wrongful death award to the administrator of the Estate of William Mundy.

Said funds to be distributed thereafter under the supervision of the Judge of Probate having jurisdiction of the Estate consistent with this opinion.

The parties are to bear their own costs on appeal.

All concurring.