2004 ME 109

**ESTATE OF Fermin A. GONZALEZ.**

Supreme Judicial Court of Maine.

Submitted on Briefs: June 24, 2004.
Decided: Aug. 16, 2004.

---

Stephen C. Whiting, The Whiting Law Firm, P.A., Portland, for appellants.

Jean L. Walsh, Ronald D. Bourque, Bourque & Clegg, L.L.C., Sanford, for appellees.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

ALEXANDER, J.

[¶ 1] Todd and Alison Gurney appeal from a judgment of the York County Probate Court (*Nadeau, J.*), finding that the will of Fermin Gonzalez was a valid holographic will. The Gurneys contend that material provisions of the will were not handwritten, and therefore it was not a valid holographic will. We affirm the Probate Court's judgment.

## I. CASE HISTORY

[¶ 2] In August of 2001, Fermin Gonzalez visited his brother, Joseph, and Joseph's wife, Elizabeth. Gonzalez was planning to fly to Florida, and he wanted to prepare his will before he left. Gonzalez showed Elizabeth and Joseph two copies of a preprinted will form. On the first copy of the form, Gonzalez had handwritten his testamentary wishes. Elizabeth testified that he had already filled out the form by the time she saw it, but that she did see him sign the document. The document, with italics indicating handwriting, reads as follows:

**BE IT KNOWN** that I, *Fermin Arlnaldo Gonzalez,* a resident of *Lot 5 35 Russell Rd. W. Newfield,* County of *York,* in the State of *Maine,* being of sound mind, do make and declare this to be my Last Will and Testament expressly revoking all my prior Wills and Codicils at any time made.

**I. PERSONAL REPRESENTATIVE**

I appoint *Joseph R. Gonzalez & Walter Gonzalez* of *38 Robeson St. Jamaica Plain, MA,* as Personal Representative of this my Last Will and Testament and provide if this Personal Representative is unable or unwilling to serve then I appoint *Elizabeth Gonzalez* of *38 Robeson St. Jamaic* [sic] *Plain,* as alternate Personal Representative. My Personal Representative shall be authorized to carry out all provisions of this Will and pay my just debts, obligations and funeral expenses. I further provide my Personal Representative shall not be required to post surety bond in this or any other jurisdiction, and direct that no expert appraisal be made of my estate unless required by law.

**II. GUARDIAN:**

In the event I shall die as the sole parent of minor children, then I appoint _____ as Guardian of said minor

children. If this named Guardian is unable or unwilling to serve, then I appoint _____ as alternate Guardian.

## III. BEQUESTS

I direct that after payment of all my just debts my property be bequeathed in the manner following:

*That the property on lot # 5 AKA 35 Russell Rd. W. Newfield ME. the house, cabin and barn.*

*All the contents of my personal property including my 1993 Mercury Capri Convertible my 1971 Ford P.Up along with all jewelry gold I.D. braclet, [sic] stainless stell [sic] Rolex submariner all power tools including my 1999 white self prop. lawn mower/tractor. My horse a paint quarter horse Blossom become the property of my three daughters, Kerry Ann Gonzalez, Tara Maureen Gonzalez Grenon Kristin Julia Gonzalez. Each holding an equal right + share and should they decide to sell all of the above that 10,000 (Ten Thousand of the proceeds after the sale of all of the above be given to my former wife Maureen T. Gonzalez Philp and 10,000 Ten Thousand Dollars be given to my mother Sol Amalia Gonzalez*

*I also wish that should my daughters decide to sell, liquidate all of the aforementioned that my brothers Joseph Ramon and Walter be given the first rights to purchase any or all of property. Including personal items. Also order that my dog "Magnolia" a Jack Russell Terrier female be given to Mrs. Elizabeth M. Vail of 7 Winfield Court N.H. along with $5,000 dollars for the care of said animal. I also wish that Thomas Francis Lynch Jr. of 68 Perry St. E. Weymouth MA. see to my proper dress and grooming in my Marine Corps dress blue uniform w/saber upon preparation for my wake and funeral. It is also my wish that the following persons be ex-cluded from any and all access to my funeral arrangement. They are Maureen T. Philp, my former wife, Colleen T. Cunningham, David P. Murphy, Janet Francis Hickey and James F. Foley Sr.*

[¶ 3] This document was signed by Gonzalez, but not by any witnesses. Additionally, several phone numbers and other notes appear to be written in the margins of the document.

[¶ 4] Gonzalez also presented Elizabeth and Joseph with a blank copy of the form. Elizabeth testified that Gonzalez was planning to copy the information neatly onto the blank form, and that he asked Elizabeth, Joseph, and his mother to sign the blank form as witnesses. They signed the blank document.

[¶ 5] Gonzalez became ill suddenly, and died on August 22, 2001. Three of Gonzalez's daughters, Kerry Gonzalez, Tara Gonzalez Grenon, and Kristin Gonzalez petitioned to probate the will. Todd and Alison Gurney, who are also Gonzalez's children, moved for a summary judgment, arguing that the will was not a valid holographic will.

[¶ 6] After trial, the Probate Court denied the motion, and found that the will was a valid holographic will. The court reasoned that:

[T]he hand written language of the decedent independently evidences his intent, when he completed his will, to include the printed language on the form he utilized to create his will, so as to give the will greater clarity.... Although the preponderance of the evidence confirms that the bare handwritings contained on the will at least marginally created a testamentary instrument, the decedent's insertion of the hand-written material or material provisions in the blank spaces implicitly adopted and incorporated the

printed text on the form and converted the form into a more clear will. It would appear illogical to conclude that the handwritings did not fulfill that apparent purpose.... The circumstantial evidence presented at trial, corroborates that the decedent's material handwriting, supported by his very signature which he would not likely have affixed if he had believed there was no immediate need to do so, evidenced that the printed portions of the document, together with his handwriting, constituted his will.

## II. DISCUSSION

▉ [¶ 7] When reviewing an order of the Probate Court, we will defer to the Probate Court's factual findings unless they are clearly erroneous, but we will review the application of law de novo. *Estate of Horne,* 2003 ME 73, ¶ 17, 822 A.2d 1177, 1181.

▉ [¶ 8] The document that Gonzalez signed does not qualify as a will under 18-A M.R.S.A. § 2-502 (1998), because it was not signed by any witnesses. Therefore, in order to be allowed or admitted to probate, the document must qualify as a holographic will under 18-A M.R.S.A. § 2-503 (1998). A holographic will is one where "the signature and the material provisions are in the handwriting of the testator." 18-A M.R.S.A. § 2-503. The comment from the Uniform Probate Code helps to explain the meaning of the statutory language:

> By requiring only the "material provisions" to be in the testator's handwriting (rather than requiring, as some existing statutes do, that the will be "entirely" in the testator's handwriting) a holograph may be valid even though immaterial parts such as date or introductory wording be printed or stamped. A valid holograph might even be executed on some printed will forms if the printed portion could be eliminated and the handwritten portion could evidence the testator's will.

Unif. Probate Code § 2-503 comment (1998).

[¶ 9] The Gurneys argue that Gonzalez did not execute a valid holographic will because a material provision of the will— evidence of testamentary intent—appears in the preprinted portion of the document, and was not handwritten. They maintain that the handwritten words are a list of what Gonzalez wanted to do with his property, but the handwritten words do not indicate that the conveyances were testamentary in nature.

[¶ 10] We have not yet addressed the impact that preprinted will forms have on holographic wills. Most jurisdictions have dealt with this issue in one of two ways.

[¶ 11] Some courts have looked to the preprinted language in order to determine the context of the handwritten words. In *Estate of Muder,* 159 Ariz. 173, 765 P.2d 997, 1000 (1988), the Supreme Court of Arizona held that a person who handwrote his wishes on a preprinted will form had effectuated a valid holographic will because the person's testamentary intent was clear. The court stated:

> We hold that a testator who uses a preprinted form, and in *his own handwriting* fills in the blanks by designating his beneficiaries and apportioning his estate among them and signs it, has created a valid holographic will. Such handwritten provisions may draw testamentary context from both the printed and the handwritten language on the form. We see no need to ignore the preprinted words when the testator clearly did not, and the statute does not require us to do so.

*Id.*

[¶ 12] Other courts have ignored all of the preprinted words, and determined

whether the handwritten words, taken alone, fulfill the requirements of a holographic will. *See Estate of Black,* 30 Cal.3d 880, 181 Cal.Rptr. 222, 641 P.2d 754, 755 (1982); *Estate of Foxley,* 254 Neb. 204, 575 N.W.2d 150, 154 (1998).

[¶ 13] We agree with the Supreme Court of Arizona and hold that printed portions of a will form can be incorporated into a holographic will where the trial court finds a testamentary intent, considering all of the evidence in the case. The Probate Court, after reviewing the document and hearing the evidence, explicitly found such an incorporation into the holographic will in this case: "[T]he hand-written material ... implicitly adopted and incorporated the printed text on the form and converted the form into a more clear will."

[¶ 14] The Uniform Probate Code comment states that "a holograph may be valid even though immaterial parts such as date or introductory wording be printed or stamped." Unif. Probate Code § 2–503 comment (1998). The printed words in Gonzalez's will: "BE IT KNOWN that I _____, a resident of _____, County of _____, in the State of _____, being of sound mind, do make and declare this to be my Last Will and Testament expressly revoking all my prior Wills and Codicils at any time made" and "I direct that after payment of all my just debts my property be bequeathed in the manner following" are introductory phrases and may be pre-printed. When filled in by the testator's handwriting, as here, they can become a valid statement of testamentary intent in a holographic will.

[¶ 15] We have long subscribed to the principle "that the right of testamentary disposition is considered to be of great importance." *Estate of Foss,* 160 Me. 214, 219, 202 A.2d 554, 557 (1964). This principle has resulted in a "well-known policy of the courts to uphold wills and not destroy

them." *Appeal of Sleeper and Littlefield,* 129 Me. 194, 205, 151 A. 150, 156 (1930). This policy must particularly hold true in the realm of holographic wills. *See Estate of Muder,* 765 P.2d at 1000.

[¶ 16] Because we read 18–A M.R.S.A. § 2–503 and its comments in light of this policy, Gonzalez's handwritten words may be read in the context of the preprinted words, and the Probate Court could properly find that the document is a valid holographic will.

The entry is:

Judgment affirmed.