71 N.J. Super. 370 (1961)
177 A.2d 61
CHARLES STOKER, PLAINTIFF,
v.
TOWN OF IRVINGTON, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, ET AL., DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided August 10, 1961.
*371 Mr. Israel B. Greene, attorney for plaintiff.
*372 Mr. Max Sherman, attorney for defendant Gifford Development Co. Inc.
Mr. Matthew Krafte, attorney for Town of Irvington et al.
LABRECQUE, J.S.C.
Plaintiff, a taxpayer of the Town of Irvington, brings this action in lieu of prerogative writs to revoke five building permits issued by the town building superintendent to defendant Gifford Development Co., Inc., and to enjoin it from proceeding with construction thereunder. He further seeks a declaration that a certain proposed division of land of Gifford is a subdivision, and that the definition of a subdivision as contained in the Irvington land subdivision ordinance is null and void as being inconsistent with the Municipal Planning Act of 1953 (N.J.S.A. 40:55-1.1 et seq.). He further seeks to compel enforcement of the ordinance and statute referred to, as against Gifford.
Defendant Gifford Development Co., Inc. is the present owner of four tracts of land located between Berkeley Terrace, Grove Street, Nineteenth Avenue and Eastern Parkway. Roughly, they comprise a greater part of four city blocks, the intersecting streets being Brighton Terrace, Argyle Terrace and Tremont Terrace. The premises in question were originally owned by the Minnesota Mining and Manufacturing Company which had contracted to sell them to Garden Grove Corporation prior to the issuance of the building permits here under attack. Garden Grove subsequently assigned its rights to the defendant Gifford, who did not however actually take title until April 24, 1961.
On or about March 17, 1961 defendant Gifford submitted to the town planning board (and to the building inspector) a plan entitled "Map of Parkway Estates situated in Town of Irvington, Essex County, N.J.," providing for the subdivision of the tract in question into 115 lots on which it was proposed to erect 97 two-family and 18 seven-family *373 houses. Submitted with the plan was an "application for classification of sketch subdivision plat" and a fee of $30 which was required to accompany an application for a major subdivision. Since Gifford was only the purchaser under contract, an identical application was filed on April 4, 1961 by Minnesota Mining and Manufacturing Company, the owner.
A comparison of the proposed subdivision map with the tax map indicates that a portion of the tract in question had been divided into lots prior to 1929. The plat submitted generally indicated lots of a substantially greater size than those on the tax map. It was approved for zoning by the building superintendent and contained a blank form reciting that the subdivision was approved as being exempt, with room for the signature of the chairman of the board or mayor and the town clerk.
In the meantime, and prior to action by the planning board, defendant Gifford concluded that its proposed subdivision did not require the approval of the board. It thereupon made an application to the building superintendent, Edward G. Mrozek, for the necessary building permits to construct four two-family houses on Brighton Terrace and one seven-family house on Eastern Parkway. These were to be constructed on lots delineated on the "Map of Parkway Estates" referred to above. Applications for the building permits were filed on March 29 and on that date the superintendent of buildings reported that while the lots upon which it was proposed to construct the buildings were in accordance with the new map and differed from the official tax map in size, nevertheless they complied with the provisions of the "D" residential zone which were applicable, and involved no new streets or roads. Thereafter, on April 6, 1961, the corporation counsel, Mr. Krafte, rendered an opinion that the subdivision did not come within the jurisdiction of the planning board since, under the ordinance, it was not considered a subdivision, and that the building permits should be issued. They were *374 issued on the 14th day of April 1961 and construction was started on the two-family houses. One of these was well advanced when an application for an injunction pendente lite was made. The remaining two-family houses had hardly progressed beyond the foundation stage, while no work at all appears to have been done on the seven-family house.
In the meantime, Gifford's application to the planning board was still pending. On April 5, 1961, it had appealed through its attorney to the town commissioners from the "action or non-action" of the planning board on its application and requested a hearing before the governing body. It was informed that its appeal was premature. The planning board in the meantime had set the matter down for hearing on April 26, 1961, in accordance with the procedure provided in the land subdivision ordinance. Notice of the hearing was published in the local newspaper and Gifford was directed to give notice to the adjoining property owners. On the date set for hearing no representative of Gifford or of the owners appeared and the hearing was adjourned until May 1, 1961. On the adjourned date there was still no appearance on behalf of the applicants, and the board rejected the application. A letter to that effect was dispatched by the board to the town commissioners. The letter gave as reasons for the rejection that no officer or authorized representative of Gifford or of the owner had appeared before it to prosecute the matter, and that no proof of service of notice of hearing, as provided by the ordinance, had been submitted to it.
The proposed subdivision, on a portion of which it is proposed to construct the buildings authorized by the building permits under attack, has never been approved by the planning board or the town governing body, nor has it been certified to be exempt.
Briefly stated, it is the contention of defendant Town of Irvington that the proposed division is not a "subdivision" as defined in the ordinance. Gifford contends that the planning ordinance expressly "exempts" from the requirement *375 of the planning board's approval, subdivisions which involve no new streets where the resulting lots comply with the zoning ordinance. It is undisputed that the proposed subdivision does not involve new streets and that the resultant lots are in compliance with the town's zoning ordinance.
The plaintiff contends that the planning board had jurisdiction over the subdivision in question, and that in the absence of action by the planning board or by the municipal governing body exempting the subdivision or approving it, the building permits were improvidently issued and should be revoked. He urges that adoption of the contentions of the defendants would be repugnant to the Municipal Planning Act, N.J.S.A. 40:55-1.2, and would render meaningless and futile the provisions of the land subdivision ordinance in question.
The land subdivision ordinance was passed on the 28th day of June, 1955. Article II sets forth the purpose of the ordinance as follows:
"The purpose of this ordinance shall be to provide rules, regulations and standards to guide land subdivision in the Town of Irvington in order to promote the public health, safety, convenience and general welfare of the municipality. It shall be administered to insure the orderly growth and development, the conservation, protection and proper use of land and adequate provision for circulation, utilities and services."
Paragraph 1 of Article IV provides as follows:

"DEFINITIONS
1. SUBDIVISION. The division of a lot, tract, or parcel of land into two or more lots, sites or other division of land for the purpose, whether immediate or future, of sale or building development; except that the following division shall not be considered subdivisions provided however, that no new streets or roads are involved: divisions of land where the resulting parcels comply with the Zoning Ordinance of the Town of Irvington, divisions of property by testamentary or intestate provision or divisions of property upon court order. Subdivision also includes re-subdivision, and where appropriate to the context, relates to the process of subdividing or to the lands or territory divided."
*376 The ordinance also defines a minor subdivision as follows:
"Any subdivision containing not more than four lots fronting on an existing minor street not involving any new street or road or the extension of municipal facilities and not adversely affecting the development of the remainder of the parcel or adjoining property and not in conflict with any provision or portion of the master plan, official map, zoning ordinance or this ordinance." (Italics supplied)
Paragraph 1 of Article V requires an owner of land, prior to subdividing, to submit to the Secretary of the Planning Board an original and seven copies of the sketch plat of the proposed subdivision "for purposes of classification and preliminary discussion." If the subdivision committee of the planning board unanimously finds that the subdivision is a minor subdivision, the chairman of the board and the town clerk sign a notation to that effect on the plat and no further planning board action is required. If, on the other hand, the plat is classified as a major subdivision, a notation to that effect is to be made on the plat, which is then to be returned to the applicant, who is required to comply with further provisions of the ordinance, including payment of a fee of $30 to the municipal clerk to cover the cost of publishing notice and inspection of the premises by the municipal engineer pending hearing on the subdivision. Upon approval by the planning board, the matter is referred to the governing body for action.
The land subdivision ordinance was passed pursuant to the authority granted by N.J.S.A. 40:55-1.2 et seq. Section 1.2 defines a subdivision as follows:
"`Subdivision' means the division of a lot, tract, or parcel of land into two or more lots, sites or other divisions of land for the purpose, whether immediate or future, of sale or building development; except that the following divisions shall not be considered subdivisions within the meaning of this act; provided, however, that no new streets or roads are involved; divisions of land for agricultural purposes where the resulting parcels are three acres or larger in size, divisions of property by testamentary or intestate provisions, or divisions of property upon court order. Subdivision also includes resubdivision, and where appropriate to the context, relates to the process of subdividing or to the lands or territory divided."
*377 The statute contains a further provision as follows:
"* * * Any such ordinance may exempt from the requirement of local municipal approval, subdivisions wherein the number of new lots is less than a designated number, or plats that do not involve new streets, or such other classes of subdivision as such ordinance shall designate. In all cases involving such exempted subdivision, the mayor or planning board chairman, as the case may be, and the municipal clerk shall certify the exemption on the plat, deed, or instrument to be filed with the county recording officer." (N.J.S.A. 40:55-1.14) (Italics supplied)
It is urged initially by the plaintiff that subsection 1 of Article IV of the ordinance should be so interpreted as to exempt from the definition of a subdivision only divisions of land resulting from testamentary disposition or court order where no new streets are involved and the resultant lots comply with the zoning ordinance. This would require changes in punctuation and wording. While there are cases in which the construction of ambiguous statutes or ordinances may justify changes in punctuation, the addition of missing words or the subtraction of superfluous words, such a situation is not here presented. The section of the ordinance in its present form is grammatically correct and may not be rewritten unless it clearly appears that it resulted from typographical error or did not follow the intention of the lawmakers. Highway Holding Co. v. Yara Engineering Corp., 22 N.J. 119, 136, 137 (1956). The municipal governing body, in adopting the ordinance in its present form, sought to create an additional exception from the definition of a subsection as set forth in the statute. We come, therefore, to consideration of the question whether the division of land proposed by Gifford, as represented by the "Map of Parkway Estates," constitutes a subdivision.
The argument is advanced by plaintiff that prior to the filing of the present map, negotiations were pending between the prior owners of the property, the town fathers and the planning board, for the construction of high-rise apartments on the present site, and that this was a more desirable use of the premises when contrasted with two and seven-family *378 houses. Such considerations cannot be permitted to enter into the present controversy. We are here concerned with the rights of a property owner and the municipality under the use proposed, and not with whether any other use would be more advantageous to the municipality.
Plaintiff argues that by virtue of the definition contained in N.J.S.A. 40:55-1.2, the division of Gifford's lands, as set forth on the plat entitled "Map of Parkway Estates," constituted a subdivision, and that it could not be excluded from this category by a contrary definition contained in a section of the ordinance enacted pursuant to the same statute. I am satisfied that the statutory definition of a subdivision governs. The town was without power, in acting pursuant to the statutory authority, to adopt its own definition of a subdivision by adding to the exceptions contained in the statute, just as it would have been without power to delete the exceptions prescribed by the statute.
The ordinance itself recites that it is enacted pursuant to the authority set forth in chapter 433 of the Laws of 1953 and the amendments and supplements thereto, i.e., N.J.S.A. 40:55-1.1 et seq. The statute referred to defines "subdivision." Municipalities taking advantage of the powers granted by the statute are bound by the legislative definition. In the regulation of subdivisions their powers are circumscribed by the provisions of the statute and they can act only in the manner therein prescribed. Schmidt v. Board of Adjustment of the City of Newark, 9 N.J. 405, 416, 417 (1952); Magnolia Development Co., Inc. v. Coles, 10 N.J. 223 (1952); Swimming River Golf and Country Club v. New Shrewsbury, 30 N.J. 132, 135 (1949); Gruber v. Raritan Tp., 68 N.J. Super. 118 (Law Div. 1961); Duffcon Concrete Products v. Borough of Cresskill, 1 N.J. 509, 515, 516 (1949); Goldstein v. Lincoln Park Planning Board, 52 N.J. Super. 44 (App. Div. 1958); Rockhill v. Chesterfield Twp., 23 N.J. 117 (1957); Saddle River Country Day School v. Saddle River, 51 N.J. Super. 589, 605 (App. Div. 1958).
*379 Any attempt to exclude from the definition of a subdivision divisions of land where the resulting parcels comply with the zoning ordinance, loses sight of the purposes of planning. Zoning and planning legislation, while similar, are not identical. Metzdorf v. Borough of Rumson, 67 N.J. Super. 121 (App. Div. 1961); Phillips v. Westfield Board of Adjustment, 44 N.J. Super. 491 (App. Div. 1957), certification denied 24 N.J. 465 (1957). Zoning covers the immediate use of land, while planning restricts transferability and future use. Unless a subdivision ordinance is somewhat restrictive of the transferability of property, it cannot be considered as an exercise of the municipality's planning power. The statute itself requires that there be consistency between the subdivision ordinance and the zoning ordinance. N.J.S.A. 40:55-1.15. Yet, in the ordinance there is excluded from the definition of a subdivision all divisions of land meeting a requirement which must be present in each case in any event, i.e., compliance with the zoning ordinance. The adoption of this exclusion would make meaningless the remaining exclusions in favor of divisions by testamentary or intestate provision or by court order. Reinauer Realty Corp. v. Nucera, 59 N.J. Super. 189 (App. Div. 1960).
Accordingly, so much of that portion of the ordinance as purports to exclude from the definition of a subdivision, lands where no new streets are involved and the resultant lots are in compliance with the zoning ordinance, must be set aside to the end that the definition of a subdivision in the ordinance shall correspond with that set forth in the statute. Thus, the ordinance is effective as to all divisions of land answering the statutory description, including that of the defendant Gifford.
But it is urged by Gifford that even though the municipality be held to be without power to declare the division of the land in question to be anything other than a subdivision, the disputed provision should be construed as an exemption authorized by N.J.S.A. 40:55-1.14. This *380 section provides that the municipal planning ordinance may exempt from the requirements of local municipal approval subdivisions wherein the number of new lots is less than a designated number, or plats that do not involve new streets, or such other classes of subdivisions as such ordinance shall designate.
The weakness of this contention lies in the fact that the ordinance, when considered as a whole, fails to support it, and its adoption would render the ordinance internally inconsistent. The ordinance in question bears a marked similarity to a model ordinance entitled "A suggested guide for land subdivision ordinances for New Jersey municipalities," which was prepared by the State Planning Section of the Division of Planning and Development in the Department of Conservation and Economic Development, following the passage of chapter 433 of the Laws of 1953. In a few respects, however, there has been a departure from the suggested form. One of these is in the definition; the model ordinance following the statute, N.J.S.A. 40:55-1.2, and the ordinance in question setting up an additional exclusion from the statutory definition. The ordinance generally constitutes the planning board as what is technically known as a "weak" board. Both the model ordinance and the one under review make express provision for only one exemption as authorized by N.J.S.A. 40:55-1.14 above. This exemption covers minor subdivisions. There is thus no specific method provided for the exemption of divisions of land such as the one here involved. The procedure prescribed in the case of minor subdivisions is thus the only one open to the parties here.
Under Article V, section 1 of the ordinance, it is provided that minor subdivisions as therein defined be classified and approved by the planning board through its subdivision committee. When unanimously so classified and approved, the chairman of the planning board and the municipal clerk are required to sign a notation to that effect on the sketch plat, and no further municipal approval is required. *381 On the other hand, in the event that a subdivision is not so classified and approved by unanimous action of the subdivision committee, it is deemed a major subdivision and further and lengthy procedures are prescribed in order to obtain approval. These include hearings before the planning board, favorable action by it, and thereafter favorable action on the part of the governing body.
Under the ordinance a minor subdivision is defined as "any subdivision (1) containing not more than four lots, (2) fronting on an existing minor street, (3) not involving any new street or road or the extension of municipal facilities, (4) not adversely affecting the development of the remainder of the parcel or adjoining property, and, (5) not in conflict with any provision or portion of the master plan, official map, zoning ordinance or this ordinance." (Italics supplied)
To construe the ordinance as setting up an additional exemption in cases where no new streets are involved and the resulting parcels comply with the zoning ordinance would render superfluous and meaningless this specific exemption of minor subdivisions. Such a construction is to be avoided. Fiscella v. Nulton, 22 N.J. Super. 367 (App. Div. 1952); Reinauer Realty Corp. v. Nucera, supra.
The power to regulate the subdivision of land is, like zoning, another tool for planning. The basic method of such regulation is by requiring the approval of the governing body of all plats after favorable referral by the planning board before such plats may be filed with the county recording officers. N.J.S.A. 40:55-1.14. The broad scheme of the local ordinance which implements the enabling act is that all proposed subdivisions must preliminarily be passed upon by the planning board to determine whether they are exempt from approval or not. In the case of minor subdivisions, this is determined on the basis of the various factors referred to in the definition. All of these criteria have to be found to be met before the board can classify a minor subdivision as exempt. Kotlarich v. Mayor *382 & Council of Ramsey, 51 N.J. Super. 520 (App. Div. 1958).
If the town governing body desired to exempt from the requirement of municipal approval all divisions of land not involving new streets or roads where the resultant parcels complied with the zoning ordinance, it could have readily so stated. It has provided that divisions where no new streets are involved and the resulting lots comply with the zoning ordinance are exempt only when they meet the other tests set forth in the definition of a minor subdivision.
It is also to be noted that even in dealing with a minor subdivision, the ordinance requires both classification and approval. Article V, Section 1(a)(b). Article VIII of the ordinance sets up certain standards, one of which reads as follows:
"Where there is a question as to the suitability of the lot or lots for their intended use due to factors such as rock formations, flood conditions or similar circumstances, the planning board may after adequate investigation withhold approval of said lots." (Par. 4(e).)
And further:
"Where a subdivision is traversed by a watercourse, drainage way, channel or street, there shall be provided a storm water easement or drainage right of way conforming substantially with the lines of such water course and such further width or construction or both as will be adequate for the purpose." (Par. 5(a).)
The standards thus prescribed are in response to the statutory directive contained in N.J.S.A. 40:55-1.20. Such standards apply to all plats, whether exempt or not. Kotlarich v. Mayor & Council of Ramsey, 51 N.J. Super. 500, 528 (App. Div. 1958). In the latter case Judge (now Justice) Hall was dealing with an ordinance containing a provision covering the exemption of minor subdivisions which, in substance, was identical with the one sub judice.
*383 The requirement that minor subdivisions be both classified and approved was likewise contained in Kotlarich v. Mayor & Council of Ramsey, supra. Judge Hall there held that there was no such thing as automatic classification of a minor subdivision by failure to act. (51 N.J. Super., at p. 536.) Action by the planning board was required before the lots could be classified as exempt. If, as Gifford contends, the lots here in question were entitled to be classified as an exempt subdivision under the ordinance, then the planning board was the proper body to pass upon its claim.
In the instant case the application made by Gifford to the planning board was for classification of a sketch subdivision plat. The procedure used was that provided by Article V, section 1 of the ordinance. The fee of $30 was that required for a major subdivision. It may be assumed that Gifford was thus asking that its subdivision be exempted from the requirements of the ordinance because no new streets were involved and the resulting lots complied with the zoning ordinance. The decision of classification and approval was for the board. If the subdivision was classified as nonexempt, Gifford had the right of appeal to the governing body. N.J.S.A. 40:55-1.19; Kotlarich v. Mayor & Council of Ramsey, 51 N.J. Super. 520, 530, 539. Assuming, arguendo, that Gifford's contention is correct and that the subdivision in question was an exempt subdivision, it could not have maintained an action to require that the lots be declared exempt until it had exhausted its administrative remedies. Kotlarich v. Mayor & Council of Ramsey, supra.
The map of Parkway Estates submitted by Gifford to the planning board was a subdivision within the meaning of the statute and of the ordinance, as construed herein. As submitted, it required classification and approval as an exempt subdivision or favorable reference by the planning board and approval by the governing body. By virtue of its failure to obtain either of these, the subdivision map may not be recorded. N.J.S.A. 40:55-1.17. The transfer *384 or sale of any land which forms part of the proposed subdivision also carries with it a penalty against the owner or agent in the form of a fine of $200, or imprisonment for not more than 30 days, for each offense, and each parcel so disposed of is deemed to be a separate violation. N.J.S.A. 40:55-1.23. Ordinance, Article IX.
Plaintiff also seeks to have the building permits set aside and revoked on the ground that they were issued prior to compliance with the subdivision ordinance and were therefore illegal, null and void. He relies upon Hilton Acres v. Klein, 64 N.J. Super. 281 (App. Div. 1960), which relies for its authority on N.J.S.A. 40:55-1.39. This provision inhibits the granting of a building permit unless the building lot abuts a street, giving access to such proposed structure, which has been duly placed on the official map, or if there be no official map, unless such street is an existing municipal street or highway. Here it is undisputed that the building permits were issued for houses each of which fronted on an existing municipal street 50 feet in width. They thus conformed with the minimum street size set forth in the ordinance. Article VIII, par. 2(b)2. In Hilton Acres v. Klein, supra, it was held that final approval of the plat involved was a condition precedent to the right to building permits, citing Cella v. Cedar Grove Board of Adjustment, 45 N.J. Super. 585 (Law Div. 1957). But in Hilton Acres v. Klein building permits covering lots on land along Pleasant Hill Road, a preexisting street, were not held invalid. In Cella v. Cedar Grove Board of Adjustment, supra, the lot for which the building permit was issued did not abut a street which was an existing street or a street on an approved plat, and thus it was held that N.J.S.A. 40:55-1.39 applied. But aside from the cases cited, the action of the building superintendent in issuing the permits in question was governed by the building code. Section 202, paragraph 1 required:
*385 "All applications, plans, etc., shall be filed by the applicant with the Department of Buildings for a reasonable time but at least (48) hours for checking and if found to be in conformity with all the requirements of this code, the zoning ordinance and all other laws and ordinances applicable thereto, whether State or local, the Superintendent after receiving the required fee as provided for in Section 208, shall cause a permit to be issued."
It is apparent from an examination of the applications that it was proposed to build the five structures in question on lots 23, 25, 26, 27 and 28 in Block 242. These were lots delineated on the subdivision entitled "Map of Parkway Estates" which had never been approved or declared to be exempt. Accordingly, the applications did not comply with the land subdivision ordinance. The permits were therefore improperly issued and must be set aside.
An appropriate order may be submitted in accordance with these conclusions.