## TOWN OF ARUNDEL

v.

### Morrill and Frances SWAIN.

Supreme Judicial Court of Maine.

June 8, 1977.

---

Smith, Elliott, Wood & Nelson, P.A. by Alan S. Nelson, Saco, for plaintiff.

Reagan, Ayer & Adams by Wayne T. Adams, Kennebunk, for defendants.

Before DUFRESNE, C. J., and POMEROY, WERNICK, ARCHIBALD, DELAHANTY and GODFREY, JJ.

DELAHANTY, Justice.

By its complaint, the Town of Arundel (the Town) sought to enjoin defendants, Morrill and Frances Swain (the Swains), from violation of a local subdivision ordinance. From judgment entered for defendants, the Town appeals. We deny the appeal.

Pursuant to 30 M.R.S.A. § 4956,[1] the Town enacted a subdivision ordinance on March 17, 1972 which required local approval of subdivision developments. Although they believed that their proposed campground was not a subdivision and that, therefore, the Arundel Planning Board (the Board) had no jurisdiction over their endeavor, the Swains nevertheless submitted their plan to the Board on January 25, 1975. Under their preliminary plan, they sought permission to construct a campground, containing 101 campsites, with an operating season extending from Memorial Day to Labor Day. A camper would pay a fee to the Swains in return for the right to occupy a campsite for "a period of one day, several days or a longer period." Each campsite would have its own electrical, water, and sewer outlets and, in addition, all campers would have access to certain common facilities including toilets, showers and washing machines.

The Swains' plan was approved on May 5, 1975. But then on May 27, 1975 that approval was rescinded, allegedly in order to hold an additional public hearing as required by the Town subdivision ordinance. On June 9, 1975 the Town filed a complaint alleging that the respondents had willfully disregarded the rescission and had proceeded with the construction of roads and buildings for the campground without the requisite approval. Averring that irreparable injury would be suffered if the subdivision ordinance were permitted to be so openly violated, plaintiff asked that the Swains be enjoined from continuing with their endeavor.

On October 28, 1975 the defendants, pursuant to the camping area licensing provisions contained in 22 M.R.S.A. §§ 2491 et seq., were granted a license from the State Department of Health and Welfare to operate a campground of seventy-five sites. The license provided that an additional twenty-six sites could be requested if an adequate water supply were established. On December 2, 1975, the Swains submitted to the Board a revised plan for 101 sites, although they specifically stated therein that they were not recognizing Board jurisdiction over the proposed campground.

Approximately two months later, on February 3, 1976, the Board granted approval for seventy-five campsites, but it limited its approval to only twenty-five campsites in the first year, with construction of an additional twenty-five sites in the second year and twenty-five in the third year being dependent upon certain factors such as the

---

1. 30 M.R.S.A. § 4956 provides in pertinent part:

   2. Municipal review and regulation.

   A. Reviewing authority. All requests for subdivision approval shall be reviewed by the municipal planning board  .  .  ..

impact of the campground on road conditions and traffic safety.

On May 26, 1976 the Town moved to amend its original complaint, inserting a claim that the respondents had begun development of and intended to operate more than twenty-five campsites in the first year. Plaintiff asked that an order be issued requiring the Swains to comply with the Board conditions of February 3, 1976.

The presiding Justice issued an order denying the Town's motion, finding that the Town had failed to show a "sufficient jurisdictional basis for the granting of such extraordinary relief" and that "there has been no showing of irreparable harm." In response to plaintiff's motion for findings of fact and conclusions of law, the court filed a decree in which it said:

> The Court concludes as a matter of law that a campground is not a "subdivision" within the meaning of Title 30 M.R.S.A. Section 4956 as amended and, therefore that Petitioner lacks jurisdiction over the proposed development of a campground by respondents.

A final judgment was entered on May 10, 1977.[2]

■ The sole question to be resolved in this case is whether the proposed campground is a "subdivision" within the meaning of 30 M.R.S.A. § 4956. If it is a subdivision, then the local ordinance enacted pursuant to § 4956 is applicable and the Town has jurisdiction over the proposed use.[3]

■ A "subdivision" is defined in the statute as ". . . the division of a tract or parcel of land into three or more lots within any five-year period whether accomplished by sale, lease, development, building or otherwise . . .." We do not believe that the creation of a specified number of campsites is the type of "division" into "lots" which was contemplated by the legislature when it enacted § 4956. Although we intend to intimate no opinion on the issue, we recognize that a campground might fall within the scope of the phrase "development, building or otherwise." However, since we find lacking the prescribed "division" into "lots," we remain convinced that a campground does not qualify as a "subdivision" within the purview of § 4956.

■ In construing the statute, we must bear in mind the fundamental rule that [s]uch a construction ought be put upon a statute as may best answer the intention which the Legislators had in view, and when determinable and ascertained, the courts must give effect to it. *In re Spring Valley Development,* Me., 300 A.2d 736, 741 *citing King Resources Co. v. Environmental Improvement Commission,* Me., 270 A.2d 863, 869 (1970).

*See also Natale v. Kennebunkport Board of Zoning Appeals,* Me., 363 A.2d 1372 (1976); *Emple Knitting Mills v. City of Bangor,* 155 Me. 270, 153 A.2d 118 (1959). In *Blier v. Inhabitants of Town of Fort Kent,* Me., 273 A.2d 732 (1971) we said:

> Legislative expression must be read in the light of the lawmakers' purpose as

2. For clarification purposes, we note that the presiding Justice ordered the Town's motion for a temporary and permanent injunction denied on June 23, 1976. Judgment was entered accordingly. However, no order affirmatively granted relief for defendants until May 10, 1977 when, upon stipulation of counsel at oral argument and by leave of Court, a judgment of July 23, 1976 was finally filed. That judgment not only denied petitioner's motion but also directed that "final judgment upon the Complaint is ordered for the Defendants."

3. The local subdivision ordinance enacted by the Town has not been made a part of the record on appeal. However, since we are in accord with those jurisdictions which have held that the definition in the enabling statute controls, we can safely assume that the definition of subdivision is identical in both the ordinance and the enabling statute, 30 M.R.S.A. § 4956. *See The Peninsula Corp. v. Planning & Zoning Comm'n,* 149 Conn. 627, 183 A.2d 271 (1962); *Pratt v. Adams,* 229 Cal.App.2d 602, 40 Cal. Rept. 505 (1964); *Stoker v. Town of Irvington,* 71 N.J.Super. 370, 177 A.2d 61 (1961); *see generally* 3 A. Rathkopf, The Law of Zoning and Planning § 4 (3d ed. 1972). We fully agree with the principle that "[m]unicipalities taking advantage of the powers granted by the statute are bound by the legislative definition." *Stoker, supra,* 71 N.J.Super. at 378, 177 A.2d at 66.

the object the statute designs to accomplish oftentimes furnishes the right key to the true meaning of any statutory clause or provision. *Id.* at 734 *citing Middleton's Case*, 136 Me. 108, 3 A.2d 434 (1939).

Ofttimes cited as a fundamental purpose of subdivision legislation is the protection of the purchaser or lessee of land from unscrupulous developers. *See, e. g.,* 3 A. Rathkopf, The Law of Zoning and Planning § 2 (3d ed. 1972). This goal is obviously only relevant when land is purchased or leased from a developer.[4]

Some enlightenment as to the lawmakers' intent can be gleaned from a reading of the enforcement section, 30 M.R.S.A. § 4956, which provides that a fine shall be charged against

[a]ny person, firm, corporation or other legal entity who *sells, leases, or conveys for consideration, offers or agrees to sell, lease or convey for consideration* any land in a subdivision which has not been approved as required by this section . .. (emphasis added).

Since the sanctions are aimed at those who sell, lease or convey for consideration (or those who offer or agree to do so), it may reasonably be inferred that the legislature intended to protect only purchasers, lessees, or those receiving land for consideration. ▇ Accordingly, it is our judgment that when the statute speaks of a "division," it contemplates the splitting off of an interest in land and the creation, by means of one of the various disposition modes recited in § 4956, of an interest in another. This does

not happen when a camper temporarily occupies a campsite.

▇ We also believe that a campground is not composed of the requisite "lots" prescribed in the statute. Words are to be given their "plain and natural meaning" and are to be construed according to their "natural import in common and approved usage." *Moyer v. Board of Zoning Appeals,* Me., 233 A.2d 311, 317 (1967) *citing* 1 E. Yokley, Zoning Law & Practice § 184 (2d ed. 1953). A "lot" has been defined as "a measured parcel of land having fixed boundaries." Webster's Third New International Dictionary 1338 (1971). Nowhere in the stipulated facts before us is it stated that the campsites have clearly delineated or fixed boundaries, and we cannot assume that they are so precisely measured off.[5] *Pelletier v. Dwyer,* Me., 334 A.2d 867 (1975); *Trafton v. Hill,* 80 Me. 503, 15 A. 64 (1888).

Here, a single tract of land is involved, whether before or after its use as a campground. The situation is akin to the renting or occupying of space in an exhibition hall, a parking lot, or a drive-in theater. Of course, in all of these situations, land is somewhat parceled off, each customer being given a certain space to occupy for a certain period of time. But in our opinion this is not the type of "division" into "lots" which the legislature intended to regulate when it enacted § 4956.

▇ In our analysis we attempt to implement the sound principle of construction that

---

4. Specifically speaking of Maine's subdivision law, one commentator has noted that the state and municipality are interested in

     accurate surveying, monumenting and legal description of properties to prevent fraud, to facilitate the marketing and conveyancing of and to enable accurate tax assessment and collection[,]

   considerations relevant only when land is bought and sold. O. Delogu, "Suggested Revisions in Maine's Planning and Land Use Control Legislation Part II," 21 Maine L.Rev. 151, 158 (1969).

5. Although, in our estimation, a campground is not divided into "lots" within the meaning of § 4956, this conclusion is not based upon our

holding in *Robinson v. Board of Appeals,* Me., 356 A.2d 196 (1976), a case strongly relied upon by defendants. According to the Swains, *Robinson* held that "the application of lot size requirements to campgrounds is absurd." It is important to point out that our decision not to apply lot size requirements there was bottomed on an initial finding that a campground was not a "dwelling" to which the local zoning law would be applicable. Our holding today that a campground is not divided into "lots" is based solely on what we consider to be the common and natural meaning of the word. Defendants' reliance on *Robinson* is misplaced.

[a]bsent a legislative definition, the terms ["divide" and "lot"] must be given a meaning consistent with the overall statutory context, and be construed in the light of the subject matter, the purpose of the statute, the occasion and necessity for the law, and the consequences of a particular interpretation. *Finks v. Maine State Highway,* Me., 328 A.2d 791, 798 (1974) *citing Grudnosky v. Bislow,* 251 Minn. 496, 88 N.W.2d 847 (1958).

Having found the inherent policies of the subdivision law heavily directed toward protection of one taking an interest in land (as well as promotion of planned regulation of community growth), we conclude that a campground is not a subdivision within the scope of § 4956 and that therefore the Arundel Planning Board has no jurisdiction over the Swains' proposed endeavor.

The entry must be

Appeal denied.

All Justices concur.