**Douglas F. SCHMIDT et al.**

v.

**TOWN OF NORTHFIELD, et al.**

Supreme Judicial Court of Maine.

Argued Sept. 18, 1987.
Decided Dec. 24, 1987.

Nathan Dane, III (orally), Bangor, for plaintiff.

Rebecca Irving (orally), Machias, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN, GLASSMAN, SCOLNIK and CLIFFORD, JJ.

CLIFFORD, Justice.

The defendants, the Town of Northfield and the Northfield Planning Board

("Northfield"), appeal from a judgment of the Superior Court, Washington County, declaring that the plaintiffs' parcels of land were not subject to subdivision approval by the Northfield Planning Board under Northfield's Land Use and Development Code since each parcel contained 40 acres or more. Northfield contends on appeal that the plaintiffs' parcels required subdivision approval because the plaintiffs' grantor had subdivided the land before its conveyance to plaintiffs.

The plaintiffs, Douglas F. Schmidt and Land Investment, Inc. ("Schmidt and Land Investment"), cross-appeal from the portion of the same judgment dismissing their count brought under Rule 80B for failure to exhaust administrative remedies. They argue that the omitted step of submitting applications for subdivision approval and building permits, before seeking review in the Superior Court of the Planning Board's refusal to review such applications, was unnecessary. We affirm both judgments.

A moratorium on subdivisions initiated by the Northfield Planning Board became effective on December 18, 1985. Parallax, Inc., the plaintiffs' grantor, acquired from St. Croix Pulpwood Company a single tract of about 2,470 acres of land located in Northfield by a deed dated January 29, 1986, and recorded February 24, 1986. A map, dated January 27, 1986, was produced for Parallax by the Maine Land Services Company. The map depicted many 5–10 acre shorefront lots around one of the three lakes included in Parallax's 2,470–acre parcel and a number of shorefront parcels of 40 acres or more located on the other two lakes. Although the map did not purport to be a boundary survey, it had been drawn to scale from an aerial photo, deed descriptions, existing plans and surveys, and recent survey work. There is nothing in the record to show that the map was presented to the Northfield Planning Board prior to the recording of the deed to Schmidt.

Parallax's intention to subdivide its parcel was further evidenced by a letter from the corporation's president addressed to Northfield residents. This letter described Parallax's plan to offer for sale lakefront parcels of 5–10 acres and stressed the property tax revenues that would be generated by the proposed development. There is no evidence in the record to suggest that this letter was authored or published before the conveyance to Schmidt and Land Investment.

On February 24, 1986, the day that Parallax's deed from St. Croix Pulpwood Company was recorded, Parallax sold a six-acre parcel of its newly-acquired tract to one Terry S. Sprague and conveyed about 870 acres to Schmidt and Land Investment, Inc., by a deed recorded simultaneously with the deed from St. Croix to Parallax. Schmidt and Land Investment subsequently attempted to subdivide their tract into 20 parcels of 40 acres or more. Neither Parallax nor Schmidt and Land Investment submitted applications for subdivision approval to the Northfield Planning Board pursuant to the municipality's Land Use and Development Code. By June 26, 1986, Schmidt and Land Investment had entered into contracts to sell eleven of their lots, alleged by Northfield to be in contravention of its subdivision ordinance.

Schmidt and Land Investment filed a complaint, later amended, in Superior Court, Washington County. They alleged that Schmidt and Land Investment, and prospective buyers of land from them, had been told by the Northfield Planning Board that it would not accept building permit applications because of their failure to obtain subdivision approval. They further alleged that the Planning Board had made it clear that it would not entertain applications for subdivision approval because of the moratorium then in effect. Count I of the amended complaint, brought under M.R.Civ.P. 80B, sought review of the Planning Board's refusal to accept applications for subdivision approval and building permits, and requested that the Planning Board be compelled to accept and act upon

building permits.[1] Count II, brought under the Declaratory Judgments Act, 14 M.R.S.A. §§ 5951–5963 (1980), requested a declaration that the plaintiffs' parcel of land had not been rendered a subdivision under the subdivision statute, 30 M.R.S.A. § 4956 (1978 & Supp.1987), and pertinent provisions of Northfield's Land Use and Development Code.[2] Count III alleged a deprivation of due process of law and an uncompensated taking of private property.[3]

On March 4, 1987, the Superior Court dismissed Count I for failure to exhaust administrative remedies. As to Count II, the Superior Court rejected Northfield's contention that its ordinance imposed subdivision regulation on parcels of 40 acres or more. Citing *Town of Arundel v. Swain*, 374 A.2d 317, 319 n. 3 (Me.1977), the Superior Court declared that the definition of the term "lot" as provided in 30 M.R.S.A. § 4956 was incorporated into the definition of "subdivision" as provided in Northfield's Land Use and Development Code. The Superior Court therefore concluded that, because Schmidt and Land Investment partitioned their property into parcels of 40 acres or more, those parcels were not subject to subdivision approval.

Northfield appealed from the adverse declaratory judgment entered on Count II, and Schmidt and Land Investment cross-appealed from the Superior Court's dismissal of Count I.

1. Count I further alleged that there existed no governmental body in Northfield to which an appeal from the Planning Board's action could be taken. This assertion was later stipulated to by both parties. *See Bruk v. Town of Georgetown*, 436 A.2d 894, 896 n. 3 (Me.1981) (direct judicial review is appropriate pursuant to Rule 80B where planning board has applied subdivision ordinance).

2. Section 4956 exempts parcels of 40 acres or more from subdivision regulation. Northfield argued before the Superior Court that its ordinance did not define "lot" to exclude parcels of 40 acres or more.

3. Count III was eventually abandoned by the plaintiffs.

4. Section 4956 provides:
 A subdivision is the division of a tract or parcel of land into 3 or more lots within any 5–year period ... whether accomplished by sale, lease, development, buildings or otherwise. ... Lots of 40 or more acres shall not be counted as lots....

Northfield's ordinance defines a subdivision as follows:
 The division of a tract or parcel of land into 3 or more lots within a 5–year period for the purpose of sale, lease, gift or other conveyance, or development or building....

Northfield argues that its ordinance defines division more broadly than section 4956 to include preliminary steps taken by a landowner "for the purpose of" eventual sale, lease, gift or otherwise. This argument fails for the same reason Northfield's argument before the Superior Court failed. In *Swain* we said that a local land use ordinance may not define terms differently than the enabling statute in order to impose more stringent regulation on land uses.

## I. DECLARATORY JUDGMENT COUNT

 Northfield contends on appeal that Parallax created a subdivision *before* the conveyance to Schmidt and Land Investment. Northfield contends that Schmidt and Land Investment were subsequent purchasers of land already subdivided, and so were in violation of section 4956 and Northfield's ordinance even if, as the Superior Court held, the partitioning of their own land into 40–acre lots did not by itself amount to subdividing. Northfield argues that the map, the actual sale of a 6–acre lot by Parallax, and a letter by Parallax to Northfield's citizens evincing its intention to subdivide its parcel are acts which, taken together, constitute a division under section 4956 and Northfield's Land Use and Development Code.[4] The record does not reflect that the map produced for Parallax was formally presented to the Planning Board before the conveyance from Parallax to Schmidt and Land Investment. Nor did Northfield show that the letter from Parallax addressed to Northfield residents was published before that sale. Subdivision activity undertaken by Parallax after the sale to Schmidt and Land Investment cannot affect the land use status of Schmidt and Land Investment's property.

The only remaining suggestion of subdivision activity upon which Northfield can

rely in arguing that Parallax created a subdivision of the land eventually conveyed to Schmidt and Land Investment is the sale of a single 6–acre parcel to Terry S. Sprague. This parcel clearly constituted a "lot" for purposes of section 4956. However, even if Parallax conveyed this lot to Sprague before its conveyance of 870 acres to Schmidt and Land Investment, which is not clear from the record, the partitioning of one lot does not constitute a subdivision under the statute. Section 4956 provides in pertinent part:

> 1. Defined. A subdivision is the division of a tract or parcel of land into 3 or more lots within any 5–year period.... In determining whether a tract or parcel of land is divided into 3 or more lots, the first dividing of such tract or parcel, unless otherwise exempted herein, shall be considered to create the first 2 lots and the next dividing of either of said first 2 lots ... shall be considered to create a 3rd lot.... Lots of 40 or more acres shall not be counted as lots....

By February 25, 1986, Parallax had partitioned its original 2,470–acre tract into three discrete, separately-owned parcels. Yet only Sprague's parcel can be considered a lot for purposes of section 4956, since Parallax's retained parcel and Schmidt and Land Investment's parcel are each over 40 acres in size. Because the conveyance of a single lot does not by itself create a subdivision under section 4956, and because Parallax's later subdivision activities with respect to its own land cannot be attributed to that part of its original tract already conveyed to Schmidt and Land Investment, the plaintiffs' 870–acre parcel was not burdened with subdivision status when they purchased it. Furthermore, as the Superior Court correctly held, Schmidt and Land Investment's subsequent partitioning of this land into parcels of at least 40 acres each did not create a subdivision under the Northfield Land Use and Development Code.

## II. THE RULE 80B COUNT

In Count I of their complaint the plaintiffs sought an order compelling the North-field Planning Board to accept and act upon building permits to be sought by the plaintiffs or buyers from plaintiffs. The Superior Court dismissed Count I for the failure of Schmidt and Land Investment to exhaust administrative remedies, concluding that they lacked standing to bring an appeal because they had not actually applied for the building permits, nor had any permits been formally denied.

We agree with that result but for a different reason. The Superior Court's dismissal of Count I was proper because there was no controversy before the Superior Court ripe for its consideration. Until an application for a building permit had actually been submitted to the Northfield Planning Board by a party to this litigation and that application been denied, there was no justiciable controversy to bring to the Superior Court under Rule 80B. *See Lund ex rel. Wilbur v. Pratt*, 308 A.2d 554, 559 (Me.1973). An administrative agency should be protected from judicial interference until the parties are affected in a concrete way by a formalized administrative decision. *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148–49, 87 S.Ct. 1507, 1515–1516, 18 L.Ed.2d 681 (1967).

The entry is:

Judgment affirmed.

All concurring.