## TOWN OF YORK

v.

## Patrick CRAGIN.

## TOWN OF YORK

v.

## Fred H. BALDWIN, Jr., et al.

Supreme Judicial Court of Maine.

Argued Nov. 17, 1987.
Reargued March 7, 1988.
Decided May 26, 1988.

E. Stephen Murray, John C. Bannon (orally), Murray, Plumb & Murray, Portland, for Town of York.

Natalie L. Burns, City of Portland, Portland, amicus curiae.

F. Paul Frinsko, Christopher L. Vaniotis (orally), Bernstein, Shur, Sawyer & Nelson, Portland, for Fred Baldwin, Jr.

Doreen E. Adler (orally), Lowther & Associates, York, for Patrick Cragin.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN, GLASSMAN, SCOLNIK and CLIFFORD, JJ.

WATHEN, Justice.

The defendants in these consolidated cases appeal from declaratory judgments rendered by the Superior Court (York County) in favor of the Town of York, plaintiff in both cases. The Superior Court declared that separate proposed real estate developments of defendants Fred H. Baldwin, Jr., Baldwin and L. John DiPalma, and Patrick Cragin, all in the Town of York were subdivisions within the meaning of 30 M.R.S.A. § 4956(1) (Supp.1987). We vacate the judgments as to all defendants.

This case involves three development proposals in the Town of York. Baldwin and DiPalma received approval from the York Zoning Board of Appeals under provisions of the Town zoning ordinance and growth control ordinance for a proposed rental apartment building containing twelve units. Baldwin received similar approval for the conversion of a farmhouse and barn into a ten-unit condominium. Building permits were refused for both projects by the code enforcement officer. Cragin applied to the Town's code enforcement officer for a permit to construct and operate a twenty-unit motel. The code enforcement officer refused to issue the permit because "the town attorney feels it is a subdivision."[1]

The Town brought an action under M.R. Civ.P. 80B and 14 M.R.S.A. §§ 5951–5963 (1980), seeking a declaratory judgment that the projects were subdivisions within the provision of 30 M.R.S.A. § 4956(1). After separate amended complaints were filed against defendants,[2] the Superior Court directed that the cases be decided by declaratory judgment and ordered the parties to file motions for summary judgment. On those motions the Superior Court ruled that each of the proposed developments was a subdivision within the meaning of 30 M.R.S.A. § 4956. Cragin appealed, as did Baldwin and DiPalma, and the cases were consolidated before this Court.

30 M.R.S.A. § 4956(1) provides in pertinent part:

A subdivision is the division of a tract or parcel of land into 3 or more lots within any 5–year period, ... whether accomplished by sale, lease, development, buildings or otherwise. ...

In determining whether a tract or parcel of land is divided into 3 or more lots, the first dividing of such tract or parcel, unless otherwise exempted herein, shall be considered to create the first 2 lots, and the next dividing of either or said first 2 lots, by whomever accomplished, unless otherwise exempted herein, shall be considered to create a 3rd lot. ...

For the purposes of this section, a tract or parcel of land is defined as all contiguous land in the same ownership. ...

Section 4956(2) authorizes municipalities to review and approve proposed subdivision plans.

---

1. Cragin appealed the denial to the Zoning Board of Appeals. The Board has not acted upon the appeal pending the outcome of this litigation.

2. An additional defendant was named in the complaint. That defendant has not appealed the Superior Court judgment.

In ruling that each of the projects constituted a subdivision, the Superior Court relied on the language of section 4956(1) that a subdivision can be accomplished by "development, buildings or otherwise," the Legislature's increasing regulation of development in the State, and the purpose of the statute to control development. The court concluded that subdivision occurs when the use of the land is divided functionally.

■ Such an interpretation is contrary to the plain language of the statute and to our decisions in *Town of Arundel v. Swain*, 374 A.2d 317 (Me.1977) and *Planning Bd. of the Town of Naples v. Michaud*, 444 A.2d 40 (Me.1982). The statute provides that a subdivision is created when there is a "division of a tract or parcel of land into 3 or more lots." Although the statute deals comprehensively with methods of division (i.e., "sale, lease, development, buildings or otherwise"), the remaining language of the statute and our prior rulings require the splitting off of a legal interest to another and the division of a "parcel of land" into lots. In *Swain*, because no division of a legal interest of sufficient dignity was split off, we found no subdivision. The subdivision found in *Michaud* was premised upon the splitting off of a legal interest *and* the creation of lots even though the precise boundaries of those lots were ill defined. Assuming that the three projects in this case may arguably involve splitting off a legal interest,[3] we hold that the division of a structure, as distinguished from the division of a parcel of land into lots, does not result in the creation of a subdivision under section 4956(1). The term "land" in its broadest sense may include interests in a structure, but in defining a subdivision as involving the creation of "lots" from a "parcel of land", the statute refers unmistakably to an interest on the ground.[4]

The Town argues that the Legislature has demonstrated its intent to include all functional divisions within the meaning of section 4956 by enacting additional regulatory devices for controlling development. *See, e.g.*, 12 M.R.S.A. §§ 4807–4807-G (minimum lot size law); 12 M.R.S.A. §§ 681–689 (land use regulation). Although the degree of regulation may have increased, the language of section 4956(1) remains unchanged. It is for the Legislature to determine whether a functional definition of "subdivision" is needed to effectively regulate land development in Maine.

The entry is:

Judgments vacated.

Remanded to the Superior Court for entry of judgment for the defendants.

NICHOLS, ROBERTS, SCOLNIK and CLIFFORD, JJ., concurring.

GLASSMAN, Justice, with whom McKUSICK, Chief Justice, joins, concurring in part and dissenting in part.

I concur in the result reached by the court that the motel project of Cragin is not subject to the subdivision law, but respectfully dissent from that part of the opinion concluding that the condominium project of Baldwin and the apartment building project of Baldwin and DiPalma are not subdivisions within the meaning of 30 M.R.S.A. § 4956(1).

By limiting the application of the subdivision law to the splitting off of interests in lots lying on the earth to the exclusion of other real estate interests, the court in my judgment ignores the plain language of section 4956(1) and reaches a result contrary to the main purpose of the subdivision law. Section 4956(1) provides that the division of a tract or parcel of land into three or more lots can be "accomplished by sale, lease, development, buildings or otherwise." The court in concluding that such

---

**3.** We intimate no opinion whether the motel operation planned by Cragin would involve the "splitting off of a real estate interest of greater dignity than the interest a transient camper has in his campsite." *Michaud*, 444 A.2d at 42.

**4.** Our interpretation is further confirmed by the statutory prohibition of sale or conveyance from a subdivision "unless at least one permanent marker is set at one lot corner of the lot sold or conveyed." 30 M.R.S.A. § 4956(4).

language can only encompass a division by a measured parcel of a piece of earth violates a basic tenet of statutory construction that each and every provision of a statute should be given meaning and effect. *Faucher v. City of Auburn*, 465 A.2d 1120, 1124 (Me.1983).

This overly narrow interpretation adopted by the court is also contrary to the main purpose of the subdivision law, namely, to regulate the "environmental quality, waste disposal and water supply," *Planning Bd. of the Town of Naples v. Michaud*, 444 A.2d 40, 43 (Me.1982),[1] and leaves unregulated as subdivisions many projects significantly affecting the environment.

Neither the statute nor any decided case limits the application of the subdivision law to the extent the court does in this case.

The court, in its reliance on our decisions in *Town of Arundel v. Swain*, 374 A.2d 317 (Me.1977), and *Michaud*, 444 A.2d 40, ignores the controlling facts presented to the court in each of those cases. In neither instance were we dealing with an interest in real estate to be "split off" by the sale or lease of a well-defined, permanent residential area within a structure placed on a "tract or parcel of land." As we stated in *Michaud*, "Plainly the key fact in *Swain* was the tenuous connection between the campers and the campsites they occupied." 444 A.2d at 42. On its facts, we distinguished *Michaud* from *Swain*. We found that even though no boundaries were delineated on the face of the earth, the purchasers, by purchasing the exclusive use of a campsite, had acquired a "real estate interest of greater dignity than the interest a transient camper has in his campsite," resulting in a sense of "territorial imperative," thus activating the subdivision statute. *Id.* at 42–43. In both cases we looked to the *nature of the real estate interest* split off by the transaction to determine whether there was a division of land within the meaning of section 4956.

Our holdings in *Michaud* and *Swain* are supported by the plain meaning of "land" used in section 4956. In 1 M.R.S.A. § 72 (1979), which provides constructional guidance for commonly used words and phrases in the Maine statutes, "land" and "real estate" are identically defined as including "lands and all tenements and hereditaments connected therewith, and all rights thereto and interests therein."[2] *Michaud*, *Swain*, and the plain meaning of the language in section 4956 demonstrate that it is the nature of the interest in real estate, not whether that interest is on the ground or in a structure, that is critical in determining when a subdivision has occurred for purposes of the statute.

Applying section 4956 to these cases, the Superior Court correctly concluded that the condominium project of Baldwin and the apartment project of Baldwin and DiPalma are subdivisions. However, because nothing more than transient interests in real estate are being created in Cragin's motel project, I agree with the result reached by the trial court that it is not subject to the provisions of the statute.

*Condominium Project of Baldwin*

Baldwin's condominium project will be subject to the Maine Condominium Act, 33 M.R.S.A. §§ 1601–101 to 1604–118 (1988). The law of real estate applies to condominiums, *id.* § 1601–108, and each condominium unit will be separately owned real estate, with part of the project owned in common, *id.* §§ 1601–103(7), 1601–105(a), (b). The creation of these condominium units, accomplished by sale, with ownership in people other than Baldwin, will constitute divisions within the meaning of section 4956. In *Michaud* we held that the conveyance of a fee interest of perpetual duration in an identifiable parcel of land constituted such a division. *Michaud*, 444 A.2d at 43. This was true even though the boundaries of the parcel were not well defined. *Id.* A condominium involves the creation of separate fee simple interests in identifiable units of real estate, and if three

---

1. *See* 30 M.R.S.A. § 4956(3) providing detailed environmental approval criteria for subdivisions.

2. 1 M.R.S.A. § 72(10), (17).

or more are created (ten units are called for in Baldwin's plans), there is a division within the meaning of section 4956.

### Rental Apartment Project of Baldwin and DiPalma

The rental units to result from the apartment project of Baldwin and DiPalma also will create sufficient real estate interests in the lessees or tenants so as to fall within the provisions of section 4956. The renting of an apartment effectively constitutes a splitting off of an interest in land. This is accomplished by the creation, by means of a lease (if one is used) or otherwise, of a tenancy interest in the person leasing or renting the apartment. *See Swain,* 374 A.2d at 320. Unlike the temporary camper in *Swain* or the transient guest of a motel, the apartment dweller has a legally defined interest in the rental unit, an identifiable portion of real estate. By virtue of that status the tenant has definite rights protected under the law, *see Perreault v. Parker,* 490 A.2d 203, 205 n. 4 (Me.1985); 14 M.R.S.A. §§ 6001–6038 (1980 & Supp.1987); 33 M.R.S.A. § 162 (1988), and "can be expected to develop a sense of territorial imperative." *Michaud,* 444 A.2d at 43.

### Motel Project of Cragin

Applying the statute as interpreted by *Michaud* and *Swain* to Cragin's motel project, I would conclude that the Superior Court erred in determining that the motel project was a subdivision. Although the motel will be a "building," Cragin's motel guests will be transient and their connection to the motel rooms "tenuous." *See Michaud,* 444 A.2d at 42. There will be no splitting off of a sufficient real estate interest to constitute a division of land within the meaning of section 4956(1).

I am mindful that many of our municipalities have not heretofore required condominium and apartment developments to secure approval as subdivisions under section 4956(1) and that our trial courts have in some cases upheld those municipal decisions. Section 4956(4) prohibits any sale, lease, or conveyance for consideration of any subdivision not municipally approved as a subdivision. To prevent uncertainty as to existing structures, I would follow the precedent of the court set forth in *Myrick v. James,* 444 A.2d 987, 1001–02 (Me.1982); *Black v. Solmitz,* 409 A.2d 634, 640 (Me.1979), and *Davies v. City of Bath,* 364 A.2d 1269, 1274 (Me.1976). Accordingly, I would apply this interpretation of section 4956(1) to the litigants in this case but otherwise only to those applicants who have not to date taken substantial steps in reliance on final approval of their applications under other applicable land use statutes and ordinances.

I would vacate the judgment of the Superior Court as to the motel project of defendant Cragin and affirm the judgment as to the condominium project of defendant Baldwin and the apartment building projects of defendants Baldwin and DiPalma.

