Ronald L. BAKALA

v.

TOWN OF STONINGTON, et al.

Supreme Judicial Court of Maine.

Argued March 4, 1994.
Decided May 25, 1994.

Laura Yustak Smith (orally), Dale Worthen, Hale & Hamlin, Ellsworth, for appellant.

Philip K. Clarke (orally), Gross, Minsky, Mogul & Singal, P.A., Ellsworth, for appellee.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, RUDMAN and DANA, JJ., and COLLINS, A.R.J.[*]

ROBERTS, Justice.

Benjamin Jeffries appeals from a judgment entered in the Superior Court (Hancock County, *Mills, J.*) vacating the decision of the Stonington Board of Appeals that affirmed the issuance of his building permit. He argues that the board correctly concluded that a prior conveyance of his property, which at the time was the middle portion of a larger parcel of land, did not create an illegal three-lot subdivision. We agree, and vacate the judgment.

The lot that now belongs to Jeffries was originally acquired by Ralph Connor in 1970 as the southern half of a larger parcel of land (Lot 1). Shortly thereafter, Connor also acquired a second parcel (Lot 2), which abutted twenty feet along the southeast corner of Lot 1. Thus, Jeffries' lot, the southern half of Lot 1, became the middle portion of combined Lots 1 and 2. See Appendix. In 1975, Connor sold the Jeffries lot, retaining the northern half of Lot 1 and all of Lot 2. Later that year, he sold the northern half of Lot 1, and in 1976 sold Lot 2 to Ronald Bakala. At no time did Connor seek or obtain subdivision approval.

Jeffries obtained his lot from Connor's successor in 1992. In March of that year, he applied for and received a permit to build an art studio on the southeasterly portion of his lot, near the boundary with Bakala. Bakala appealed, claiming that Connor's conveyance of the Jeffries lot created an illegal subdivision, thereby prohibiting the issuance of a permit to Jeffries. The zoning board upheld the permit, finding that even though Connor owned abutting Lots 1 and 2 simultaneously, they remained separate pieces of property. Accordingly, the conveyance of the Jeffries lot did not create a three-lot subdivision, but merely divided Lot 1 into two parts.

Bakala then appealed to the Superior Court. The court found that an amendment to the subdivision law established that Lots 1 and 2 were a single parcel for purposes of that law. The court concluded that the conveyance of the Jeffries lot therefore created an illegal three-lot subdivision, and vacated the board's decision. This timely appeal followed.

I.

■ On appeal from a judicial review of action taken by a zoning board, we review the record before the board directly for abuse of discretion, errors of law, or findings unsupported by substantial evidence. *Boisvert v. King*, 618 A.2d 211, 213 (Me.1992). We first examine the board's treatment of P.L.1975, ch. 475, which repealed and replaced, effective October 1, 1975, 30 M.R.S.A. § 4956(1) (Supp.1974). The board reasoned that because Connor sold the Jeffries lot in July 1975, the new law did not apply. We disagree.

■ The version of the subdivision law in effect at the time Connor conveyed the Jeffries lot was silent as to what made up a single tract of land, and provided little guidance whether a particular division of a tract would create a subdivision. *See* 30 M.R.S.A. § 4956(1) (Supp.1974), *repealed by* P.L.1975, ch. 475. The 1975 amendment to section 4956(1) attempted to clarify those points by

[*] Justice Collins sat at oral argument and participated in the initial conference while he was a Justice, and, on order of the Chief Justice, was authorized to continue his participation in his capacity of Active Retired Justice.

providing definitions of a tract of land, as well as a subdivision. P.L.1975, ch. 475.

■ Statutory interpretation is a question for the court, the purpose of which is to discern the legislative intent behind the statute. *Maine Beer & Wine Wholesalers Ass'n v. State,* 619 A.2d 94, 97 (Me.1993). Construction by a later Legislature of a statute passed by a previous Legislature is not conclusive evidence of the latter's intention in enacting the statute. *Delano v. City of South Portland,* 405 A.2d 222, 226 (Me.1979). When prior legislative terminology is ambiguous, however, enactments by a later Legislature may be helpful in ascertaining legislative intent "and may be taken into consideration in dissipating the uncertainty of a foundational statute." *Mundy v. Simmons,* 424 A.2d 135, 137 (Me.1980).

The purpose of P.L.1975, ch. 475 was "to clarify the meaning" of certain disputed points of municipal law. L.D. 1518, Statement of Fact (107th Legis.1975). The Legislature specifically noted that the bill did not create new exemptions or remove existing ones, but merely clarified "what is a subdivision in the first instance and when certain exemptions apply and when they do not." *Id.* In these circumstances, we find it appropriate to apply the clarifications in P.L.1975, ch. 475 to the conveyance of the Jeffries lot. *See Mundy,* 424 A.2d at 137–38 (appropriate to consider later legislative enactment when legislative history stated that bill was intended only to clarify preexisting legislative intent, not to make substantive changes). P.L. 1975, ch. 475 was codified at 30 M.R.S.A. § 4956(1) (1978), which was replaced by 30–A M.R.S.A. § 4401(4) (Supp.1993). Further references in this opinion are to section 4956.

## II.

■ Section 4956(1) defines a tract or parcel of land as "all contiguous land in the same ownership." Because Lots 1 and 2 shared in part a common boundary, we conclude that they constituted a single tract of land at the time Connor sold the Jeffries lot. Given that conclusion, the next question is whether that conveyance resulted in an illegal subdivision, since Connor failed to obtain municipal approval as required by 30 M.R.S.A. § 4956(2)

(1978), *replaced by* 30–A M.R.S.A. § 4403 (Supp.1993).

■ Section 4956(1) also provides that "[a] subdivision is the division of a tract or parcel of land into 3 or more lots within any 5–year period." In determining whether a tract of land has been divided into three lots, "the first dividing . . . shall be considered to create the first 2 lots and the next dividing of either of said first 2 lots, by whomever accomplished . . . shall be considered to create a 3rd lot." *Id.* Jeffries argues that Connor's conveyance of his lot was "the first dividing" and therefore created only "the first 2 lots," even though the property remaining in Connor's possession was in two separate pieces. We agree.

■ In construing a statute, we look first to its words, giving them their plain meaning. *Estate of Stone v. Hanson,* 621 A.2d 852, 853 (Me.1993). Section 4956(1) clearly states that for purposes of the subdivision law, the first division of a tract of land creates only two lots. There is no exception for cases in which the first division involves the middle portion of a tract of land. Moreover, interpreting the statute in this manner does not lead to an illogical result, because we have previously stated that for a division to occur, there must be both the splitting off of a legal interest to another person and the separation of the parcel into lots. *Town of York v. Cragin,* 541 A.2d 932, 934 (Me.1988). In this case, although Connor separated the parcel into lots, he conveyed a legal interest only in the Jeffries lot. He retained a legal interest in Lot 2 and the remainder of Lot 1, such that "the next dividing" of the parcel did not occur until he sold the rest of Lot 1. *See* 30 M.R.S.A. § 4956(1); *see also Schmidt v. Town of Northfield,* 534 A.2d 1314, 1317 (Me. 1987) (the conveyance of a single lot does not by itself create a subdivision). Only then was the subdivision created.

■ Our interpretation of the subdivision law does not contravene its purposes of inhibiting uncontrolled land development and promoting planned growth. *See Town of Arundel v. Swain,* 374 A.2d 317, 321 (Me. 1977). A landowner may divide a tract as

the landowner pleases, splitting off a legal interest in the first lot without penalty. The next division of either the first lot or the remaining pieces in the tract, however, creates a third lot, and a subdivision. 30 M.R.S.A. § 4956(1). Bearing in mind that a "division" may be accomplished not only by conveyance, but also by "lease, development, buildings, or otherwise," *id.*, we are confident that the result in this case will not lead to unrestricted land development.

The 1975 conveyance of Jeffries' lot did not create an illegal three-lot subdivision.

### III.

Bakala contends that the board erred in failing to consider the effect of the building permit on his water line easement. We need not address that contention, because it comes too late; the record reveals that he did not raise that issue before the board. *See Morris v. Resolution Trust Corp.*, 622 A.2d 708, 714 (Me.1993) (issues raised for the first time on appeal are generally deemed waived). Moreover, although Bakala claimed ownership of the land on which the art studio was to be constructed, and the presence of a seepage bed thereon, he failed to demonstrate either.

The entry is:

Judgment vacated.

Remanded with direction to affirm the decision of the Stonington Board of Appeals.

All concurring.

## APPENDIX

### PROPERTY OF RALPH CONNOR
Stonington 1974
(not to scale)

85'

North one-half

conveyed by Connor to Robinson
November 1975

50'

85' ———— (LOT 1) ————

South one-half

conveyed by Connor to McKee
July 1975
      and
obtained by Jeffries
March 1992

50'

65'        20'        80'

N

Sea
Breeze
Ave.

(LOT 2)

conveyed by Connor to Bakala
August 1976

100'